# Foscue *v.* Lyon.

*Bill in Equity for Account and Settlement of Trust Estate.*

1. *Parol evidence; not admissible to change character of legacy.*—When a general pecuniary legacy is bequeathed to a trustee, with specific directions as to its investment, parol evidence is not admissible, to show that the testator verbally instructed or authorized the trustee to receive from his executors, in lieu of the money bequeathed, or in payment of the legacy, the promissory note of a third person, given to the testator for money loaned. Such evidence would vary the character of the bequest, changing it from a general pecuniary legacy, into a specific bequest of a chose in action.

2. *Payment of legacy; authority of trustee to receive stocks, or choses in action, in lieu of money.*—When a general pecuniary legacy is bequeathed to a trustee, to be by him invested in safe or productive stocks, or placed at interest on good security, as he in his discretion might think best, the trustee may, in the exercise of his discretion, receive from the executors, in payment of the legacy, stocks or choses in action which the testator himself held as an investment; but he has no authority to receive real or personal property, which could only be converted into an interest-bearing capital by a sale.

3. *Judicial notice of condition of country during late war.*—In determining whether a testamentary trustee acted in good faith, and with reasonable diligence and prudence, in the investment and use of trust funds during the late war, where the will imposed upon him the duty of making investments which would pay interest or dividends, the courts will take judicial notice of the disturbed condition of the country during that period, the scarcity of stocks

[Foscue v. Lyon.]

and public securities, the fluctuating values of property of every kind, and the consequent difficulty of making safe and productive investments.

4. *Prudence of testamentary trustee in making investment.*—In determining the prudence of a testamentary's trustee's conduct, where the duty of making an investment of the trust funds was imperative, the fact that he merely continued an investment made by the testator himself is a material circumstance in his favor.

5. *Conversion of interest into principal by trustee.*—If a testamentary trustee, in the exercise of the discretion with which he is clothed, receives from the executors, in payment of a pecuniary legacy, which he is required to invest, the promissory notes of third persons given to the testator for money loaned, the principal of which does not equal the amount of the legacy, it is his duty to convert into principal so much of the accrued interest, when collected, as will make up the deficiency.

6. *Trustee's liability for money collected in Confederate treasury-notes.*—Repeated decisions of this court have settled the principle, that a trustee is not responsible for money collected by him, during the late war, in Confederate treasury-notes, which perished on his hands, without fault on his part, when the war terminated.

7. *Interest on legacy; when payable, and liability of trustee for.*—On a general pecuniary legacy, interest is not payable until the lapse of eighteen months from the grant of letters testamentary ; yet, if the trustee of the legacy collects from the executors interest from the testator's death, the over-payment enures to the trust estate, and the trustee cannot claim it as against the beneficiaries ; and especially is this the case where the executors do not complain of the over-payment. and where any complaint by them would be barred by the statute of limitations.

8. *Trustee's liability for failure to collect money during late war.*—A trustee is not personally responsible for losses resulting from his mere failure to make collections during the late war, since delays in making collections during that time were unavoidable ; compulsory collections being suspended, and no collections being practicable except in Confederate currency.

9. *Loan of trust funds on mortgage of real estate.*—A trustee may properly loan money in his hands, which he is required to invest, on mortgages of real estate ; and ordinarily, if the money advanced does not exceed two-thirds of the value of the mortgaged property, it is considered a prudent transaction, and the trustee is not held responsible for any subsequent deterioration of the property.

10. *Purchase of lands with trust funds by trustee.*—Although a trustee has no authority, unless expressly conferred by the instrument creating the trust, to change the character of the trust estate, by purchasing lands with the trust funds in his hands ; yet, he may take lands from a debtor, at a fair price, when necessary to prevent a loss of part of the trust funds, which he has loaned out in the legitimate exercise of his discretion ; and the lands so purchased become a part of the trust estate in his hands.

11. *Same ; liability of trustee for failure to sell.*—Having made such a purchase of lands, the trustee is not responsible for any subsequent deterioration in their value, because of his failure and refusal to re-sell, a few days after his purchase, when offered by a solvent purchaser the price which he had paid. The rights of the beneficiaries having then attached, he could not sell without an order of court.

12. *Over-payments by trustee, to tenant for life ; right of retainer and reimbursement.*—If the trustee, in paying the annual interest to the tenant for life, advances more than is justly due, it is the duty of the life-tenant to protect him against loss on that account, and the trustee may retain out of the interest subsequently accruing to the life-tenant until he is reimbursed : and if the trustee has resigned, and the trust estate is in the hands of a receiver appointed by the court pending the settlement of the trust, the court may direct the receiver to apply the accruing interest to the indemnity of the trustee.

13. *When petition, or supplemental cross bill, is proper.*—Whether a defendant in a pending suit may obtain relief, touching matters involved in the litigation, by petition, or by supplemental cross bill, rests in the sound discretion of the court ; and if a supplemental cross bill is filed, when a petition would

[Foscue v. Lyon.]

be more appropriate, a demurrer to it may be overruled, and the cross bill itself be treated as a petition.

14. *Lien of trustee, for reimbursement, on lands purchased with over-payment.*— If the tenant for life has received from the trustee more than the amount justly belonging to him as annual interest, and has invested the moneys so received in the purchase of lands, the trustee has no lien on the lands for his reimbursement, and no equity to subject them to his indemnity in the suit for the settlement of the trust.

APPEAL from the Chancery Court of Marengo.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 23d December, 1873, by Mrs. Mary Jane Foscue and her two children, Ellen Foscue and Frank L. Foscue, against Francis S. Lyon; and sought an account and settlement of a trust created by the will of Augustus Foscue, who was the father of Mrs. Mary Jane Foscue, and whose last will and testament was duly admitted to probate, in said county, in May, 1861, soon after his death. The clause creating the trust was in the following words : " I give and devise to Francis S. Lyon, in trust for the use and benefit of my daughter Jane, the wife of Frederick Foscue, the following named negro slaves, together with the future increase of the females thereof, to-wit," naming them ; " for the sole and separate use, benefit, and support of my said daughter, for and during the term of her natural life, free and exempt from the control, possession, contracts, and obligations of her husband ; and at her death, to go to, and be equally divided among her children. I moreover, for the further use, benefit, and support of my said daughter, give and bequeath to the said Francis S. Lyon the sum of fifty thousand dollars in cash, out of my estate ; to be by him as trustee invested in some safe and productive stock, or stocks, or placed at interest on good security, as he may in his discretion deem best; the interest on the same he shall collect annually, or the dividends at such times as they may accrue, and pay over the same to my daughter Jane, for her sole and separate use and benefit aforesaid, so long as she may live ; and in making such payments, the receipt of the said Jane to the said trustee shall be valid and binding, without her being joined by her husband; and at the death of the said Jane, the principal of the said sum of fifty thousand dollars shall by said trustee be settled upon and vested in the children of the said Jane."

B. W. Whitfield, who was a son-in-law of the testator, and said F. S. Lyon, were named as executors of the will, and were exempted by it from giving bond ; and they both qualified as executors, soon after the testator's death, on the 27th May, 1861. On the 1st December, 1862, said Lyon, as trustee, received from said executors, in payment and satisfac-

tion of the legacy of $50,000, the promissory note of G. Breitling for $45,000, and the promissory note of Sledge & Compton for $1,080. These notes had been given by the respective makers to the testator in his life-time for borrowed money; and the Breitling note was secured by a deed of trust on two tracts of land, known respectively as the "Calhoun place" and the "Lyon place," and a considerable number of slaves, which were conveyed to said F. S. Lyon as trustee, and he was authorized to sell for cash on default being made in the payment of the secured note. This note was given in 1857, for $52,459.20; but, on a settlement had between said Breitling and the testator on the 1st March, 1861, as shown by an indorsement on the note, the amount then due was reduced to $45,000. When the trustee accepted these notes from the executors, a computation of the interest due on them was made, and the note of Sledge & Compton was taken to make up the difference between the amount then due on the legacy and the amount then due on the Breitling note; and in the computation interest on the legacy was counted from the day of the testator's death.

In December, 1865, the trustee took possession of the lands conveyed by Breitling's deed of trust, and sold them at public outcry under the power contained in the deed, but for one-third cash, and the balance in one and two years. At this sale, James R. Jones became the purchaser of the "Calhoun place," at the price of $33,380; of which amount he paid one-third in cash, and gave his promissory note for the residue, payable in one and two years, and secured by a deed of trust on the lands, to R. M. Campbell as trustee. The "Lyon place" was purchased by one Curtis, who paid the purchase-money according to the terms of the sale. In January, 1868, said J. R. Jones having become insolvent and absconded, Lyon as trustee took possession of the "Calhoun place;" and on the 6th December, 1869, at his instance, the lands were sold by the trustee under the deed of trust, and were purchased at the sale by said Lyon.

On the 5th January, 1863, the said executors filed in the Probate Court their accounts and vouchers for a final settlement of their testator's estate; and on the 9th December, 1872, a decree *nunc pro tunc* was rendered by that court, discharging them from further liability as executors. On the 15th December, 1873, Lyon filed his resignation as trustee with the register in chancery, and made a settlement of his accounts and vouchers as trustee; and the register allowed the account as stated by him, against the objections of Mrs. Foscue and her children, who thereupon filed their bill in this case. The bill alleged that the defendant, as

trustee, received the amount of the legacy from the testator's executors, and failed to invest it according to the directions of the will; that he failed to collect and pay over the annual interest, as he ought to have done; that he had no authority to invest any portion of the trust funds in the purchase of lands, as he claimed to have done, and that the trust estate was greatly injured by his neglect, mismanagement, and violation of official duty; and the complainants insisted that they were not bound to accept the lands as any part of the trust estate. By a petition, subsequently filed, the complainants asked the appointment of a receiver, to take charge of the trust estate, and also of the lands, with power to lease or rent them; and a receiver was appointed without objection.

The defendant filed an answer, denying all the charges of negligence, waste, or other misconduct; giving a full history and statement of all his acts in relation to the trust estate, explaining and justifying them. He alleged that, in receiving the note of G. Breitling from the executors, he acted under the verbal directions of the testator himself, given a few days before his death; and that his purchase of the "Calhoun place," at the sale under the mortgage given by Jones, was necessary to save the debt due from said Jones to the trust estate. He alleged that, in the numerous and complicated transactions connected with the trust estate during the war, some mistakes had occurred through accident or inadvertence, which he asked might be corrected; and he specified particularly the allowance of one year's interest more than was due on the Breitling note when he received it from the executors, and that he had charged himself with interest on the testamentary trust fund from the time of the testator's death, whereas interest was only chargeable eighteen months after his death. He also filed a cross bill, in which he repeated these statements, and further alleged that Mrs. Foscue had been fully informed of all his acts in connection with the Breitling note and the "Calhoun place," and had approved and ratified them; also, that he had paid and advanced to Mrs. Foscue, at different times, more than she was entitled to receive on account of the interest of the trust fund, and that she had invested some of these moneys in the purchase of a house and lot in Demopolis; and further, that he made these advancements and payments on the faith of her promise that he should be refunded any excess out of the trust estate. The prayer of the cross bill was, that an account might be taken of the trust fund, charging the trustee only with the amount which he had actually collected on account of the legacy, or which by due diligence he might

[Foscue v. Lyon.]

have collected; that the legacy might be abated, *pro tanto*, on account of the loss of all the slaves belonging to the estate, and the great loss and diminution in value of all other kinds of property by the war; that the "Calhoun place" might be received and treated as a part of the trust estate; and that any over-payment which he might have made to Mrs. Foscue might be made good to him out of her interest in the trust estate, or out of the house and lot in Demopolis.

The cause was submitted for final decree, on pleadings and proof, at the June term, 1875, when the chancellor held and decreed—1st, that the complainants were entitled to an account of the trust estate at the hands of the trustee; 2d, that the trustee was authorized, "by the terms of the trust," to receive the note of Breitling from the executors in payment or satisfaction of the pecuniary legacy; 3d, that in the purchase of the "Calhoun place," under the facts disclosed by the evidence, in the name of the beneficiaries, and for their benefit, the trustee acted in good faith, and within the scope of his powers as trustee, and the purchase was ratified; 4th, that interest on the legacy did not begin to run until the lapse of eighteen months from the testator's death; and, 5th, that an account of the trust fund should be taken and stated by the register, as master, on the principles settled by the opinion filed in the case.

From this decree the complainants in the original bill appeal, and here assign as error—1st, the overruling of several objections on their part to interrogatories to witnesses, as to the testator's verbal instructions to the trustee to receive the note on Breitling in payment of the legacy to Mrs. Foscue and her children; 2d, that part of the decree which declared that the trustee was authorized to receive the note on Breitling in payment of the legacy; 3d, that part which ratified the purchase of the "Calhoun place" by the trustee; and, 4th, that part which held that the trustee was only liable for interest on the legacy from the lapse of eighteen months after the testator's death.

In stating the account under the order of reference, the register ascertained that the trustee had made over-payments to Mrs. Foscue, amounting to more than $14,000, and that over $13,000 of this sum was due from him to her children, on account of the trust fund. Before the register made his report under the reference, the trustee filed a "supplemental cross bill in the nature of a bill of review," stating the result of the master's account under the reference, with the other material facts above stated, and asking that a lien be declared in his favor, for the amount of these over-payments, on the

[Foscue v. Lyon.]

house and lot in Demopolis, and on Mrs. Foscue's interest in the trust property in the hands of the receiver; and that she be enjoined from collecting, and the trustee from paying to her, any interest on the trust fund, or rents and profits of the trust property in his hands, until this amount was refunded to the trustee. The chancellor overruled a demurrer to this supplemental cross bill, and also refused to dissolve the injunction granted under it on the coming in of the answer. From this decree an appeal is also taken by Mrs. Foscue, and it is here assigned as error.

EUGENE McCAA, and W. W. DUGGER, for appellants.—1. The bequest for the benefit of Mrs. Foscue and her children was a general pecuniary legacy, and no parol instructions of the testator could be received to change its character, or to relieve the trustee from liability for his failure to collect it in money.—*Nichols v. Osborne*, 2 P. Wms. 421; 2 Vesey & B. 318; 2 Grattan, 280; 2 Atk. 372; 3 P. Wms. 354; 1 Yeates, 437. To receive such parol evidence would be, *pro tanto*, a revocation of the will.—14 Gray, 114.

2. The trustee was himself one of the executors. He had no authority to receive any thing but money in payment of the legacy. His letters to Mrs. Foscue admit that he had received it, and his conduct estops him from denying that he had received it.—18 Conn. 138; 20 Conn. 563; 25 Conn. 118; 26 Vermont, 366; 7 Ohio St. 105; 3 Hill, 221; 37 Mis. 207; 12 Barb. 135; 33 Penn. St. 316; 13 Ser. & R. 304; 1 Metc. 193; 9 Cal. 204; 6 Mich. 76; 27 N. H. 503; 37 N. H. 65.

3. The terms of the trust were imperative. It was the duty of the trustee to collect the fund, and to invest it in safe bonds, or lend it out on good security. He had no authority to invest it in lands, nor can he charge the trust estate with the depreciation in the value of the lands. He violated his duty in purchasing the lands, and he must himself suffer the consequences of his fault.—*Miller v. Chaplin*, 20 Ohio, 442; *McKinley v. Irvine*, 13 Ala. 681; 6 Munf. 446; 32 Ala. 433; 29 Ala. 367; Hill on Trustees, 368–72; Tiff. & Bull. 587, 633; *Akerman v. Emmett*, 4 Barb. 626. If he bought the lands, as he alleges, only to save a debt due to the trust estate, he was guilty of great negligence and breach of duty, when he failed to re-sell it to Selden, Siddons, or Dugger, who offered to take it off his hands soon after his purchase.—3 Myl. & Cr. 495; 2 Wms. Ex. 1637.

4. The Breitling deed of trust conveyed a large number of slaves, in addition to the lands; and the trustee was guilty of great negligence in letting them perish on his hands by the results of the war. It was, also, a neglect of duty on his

[Foscue v. Lyon.]

part not to collect the notes as they fell due. For these acts of negligence he should have been held liable.—*Harrison v. Mock*, 10 Ala. 185; *Royall's Adm'r v. McKenzie*, 25 Ala. 353.

5. When income or interest is bequeathed, it begins to run from the testator's death, if the fund is productive, and the estate free from debt, as was the case here.—*Selleck v. French*, 1 Amer. L. C. 524, note; 1 Vesey, sr. 308; 3 Atk. 102, 438; 1 Dick. 310; *Carey v. Austin*, 2 Bro. C. C. 58; 8 Paige, 89; 2 Wms. Ex. 1234; Amer. Law Times, February, 1874, p. 32; *King v. Talbot*, 40 N. Y. 76. But, whether the interest was collected by the trustee properly or improperly, he is responsible to the beneficiaries for it, since he did in fact collect it.—1 Hare, 167; 2 J. J. Mar. 203; 2 Rand. 409; 4 Mass. 208. Money voluntarily paid, through ignorance or mistake of law, with a full knowledge of all the facts, and without any fraud or imposition, can not be reclaimed, either at law, or in equity.—*Town Council of Cahaba v. Burnett*, 34 Ala. 402; *Benson v. Monroe*, 7 Cush. 125; 4 Gill, 425; 5 Gill, 244; 5 Conn. 528; 29 Ala. 233; 21 Ala. 756; 26 Ala. 413; 1 Bac. Abr. (Bouv.) 411–12.

6. The trustee should be made to pay the entire costs of the litigation, since the beneficiaries were forced to it by his action in the premises.—*DePeyster v. Clarkson*, 2 Wendell, 77; *Bryan v. Craig*, 12 Ala. 354; *Bethea v. McCall*, 5 Ala. 108; *Garnett v. Carr*, 3 Leigh, 407; *Granberry v. Granberry*, 1 Wash. C. C. 246; 1 Johns. Ch. 84; *King v. Talbot*, 40 N. Y. 83.

7. The supplemental cross bill in the nature of a bill of review, as it is called, cannot be sustained, either as a supplemental bill, or as a bill of review; and on the facts stated, it is wanting in equity and merits.—Story''s Eq. Pl. §§ 404, 421–2; 3 Dan. Ch. Pr. 1729; 17 Vesey, 176; 35 Ala. 70; *Montevallo Coal Co. v. Reynolds*, 44 Ala. 253; 16 Texas, 432; 39 Ala. 409; 16 Ala. 274; *Skyring v. Greenwood*, 4 Barn. & Cr. 281; *Willan v. Willan*, 16 Vesey, 89; *Walker v. Walker*, 9 Wallace, 743; *Henshaw v. Bissell*, 18 Wallace, 255; 34 Vermont, 208.

J. T. JONES, and WATTS & SONS, *contra.*—1. In taking the Breitling note from the executors, in payment of the pecuniary legacy, which he was required to invest, or loan out at interest, the trustee was obeying the instructions of the testator, and, in effect, only continuing an investment which the testator himself had made. The testator had trusted Breitling; the note was amply secured, and the facts show that it was a prudent act on the part of the trustee.—*Rowth v. Howell*, 3 Vesey, 565; *Harrison v. Mock*, 10 Ala. 185.

[Foscue v. Lyon.]

2. The trustee's discretionary powers were very full; and in the exercise of them, the material question is, whether he acted in good faith, and with reasonable diligence; that is, with such care, caution, and diligence, as a man of ordinary care and prudence would exercise in relation to his own affairs.—*Thompson v. Brown*, 4 Johns. 628; *Dean v. Rathbone*, 15 Ala. 334; *Gould v. Hayes*, 19 Ala. 438; *Harrison v. Mock*, 10 Ala. 185. In judging of the trustee's conduct here, the circumstances by which he was surrounded must not be overlooked; and the court will take judicial notice of the condition of the country at that time. In the midst of a protracted and exhausting war, with no opportunities for stable or profitable investments, no public stocks in the market, but little confidence in private or public securities, and all kinds of property fluctuating in value, the most prudent and skillful financier would have been greatly puzzled to make an investment of $50,000, which would have been at once safe and profitable—which would yield an annual interest, and not be liable to deterioration or loss.

3. It is not contended that the trustee had any power to convert the trust funds into land, as a permanent investment. The question is, whether he was authorized to buy the lands, under the circumstances disclosed by the evidence, in order to save a debt due to the trust estate; and this question resolves itself into another—would a court of equity, on a proper application, have authorized the purchase? Whatever a court of equity would direct a trustee to do, it will ratify and confirm, when done by him without its order.—1 Perry on Trusts, § 458; 2 *Ib.* § 476; *Dean v. Rathbone*, 15 Ala. 334; 8 Gill, 403; *Cowles v. Marks*, at the last term.

4. Interest on the legacy to Mrs. Foscue and her children did not begin to run, until the lapse of eighteen months from the death of the testator, or the grant of letters.—*Hallett & Walker v. Allen*, 13 Ala. 555; Hill on Trustees, 364; 2 Kent's Com. 417, note *a*; 6 John's Ch. 33; *Myers v. Myers*, 33 Ala. 85. Interest from the testator's death cannot be charged against the trustee, on the ground that he received it; for, in fact, he did not receive it, nor did he receive one dollar in money. In making his settlement with the executors, the amount due him was estimated, principal and interest, at $56,422.05; and he received for this the Breitling note ($45,000), with the accumulated interest, which was estimated at $10,287.36; and the note of Sledge & Compton was taken to make up the residue. But, in this calculation of interest, a mistake was made of the interest for one year, $3,600; and this sum could not, of course, be collected on the Breitling note, nor was it collected. The trustee, then, cannot be

charged with money which he did not collect, and which he had no right to collect. If he acted in good faith, he can only be charged with his actual collections, and he is not estopped from showing precisely how the accounts stand.— *Hamilton v. Gwynn*, 29 Ala. 233. Besides, if he had collected from the executors more than he was entitled to receive, he would be liable to them, or to Foscue's estate, for the over-payment; and it would be no defense to him that he had paid the money over to other persons.

5. The trustee is entitled to reimbursement out of Mrs. Foscue's interest in the trust estate, for over-payments made to her by him.—Hill on Trustees, 382; *Crutchfield v. Haynes*, 14 Ala. 49; *Crutchfield v. Houston*, 22 Ala. 76; *Colbert v. Daniel*, 32 Ala. 314; Perry on Trusts, §§ 485, 915.

BRICKELL, C. J.—The clear intention of the testator, in the bequest under consideration, was the creation of an interest-bearing fund of fifty thousand dollars, the annual interest on which should be paid to his daughter during her life, and the principal of which, remaining undiminished at her death, should be settled on and vest in her children. The mode adopted by the testator of accomplishing his intention, was a general pecuniary legacy of fifty thousand dollars in cash, to the appellee, in trust, to be by him invested in safe or productive stock or stocks, or placed at interest on good security, as in his discretion would seem best. As trustee, the appellee was charged with the duty of receiving the legacy, investing it, collecting annually the dividends, if invested in stocks, or the interest, if placed at interest, and the payment thereof to the life-tenant. The parol evidence introduced by the appellee, of the instructions given by the testator to receive the Breitling note in payment, or in lieu of the money bequeathed, is not entitled to any influence in determining any question now presented. The will is clear and unambiguous in its terms; the subject matter of the bequest, the persons who are to take, the duration of interest, and the duties of the trustee, are clearly defined and expressed. No verbal instructions given to the trustee can be received to vary or alter the bequest in any of its terms. The evidence offered would tend to vary the character of the bequest, from a general legacy of *quantity* merely—of fifty thousand dollars in money—into a specific bequest of a *chose in action*. The bequest, as it is written in the will, is payable after debts, from real or personal assets, in preference to any right of residuary legatees or devisees, and can fail only because of a deficiency of assets. *Lewis v. Darling*, 16 How. 1. The parol evidence would con-

(30)

vert it into a specific bequest of a chose in action, failing, if
from any cause that should fail, before payment or delivery
to the trustee. The authority of the trustee to receive the
note on Breitling, in payment of the legacy, cannot depend
on these verbal instructions, but must be derived from the
terms of the bequest, and the duties it imposes. These can-
not be increased or abridged by any verbal expressions
of the testator.—*Torbert v. Twining*, 1 Yeates, 437 ; 1
Greenl. Ev. §§ 287–291 ; *Hughes v. Wilkinson*, 35 Ala. 453.

2. It is claimed by the appellants, that the trustee was
without authority to receive any thing but money in satisfac-
tion of the legacy—that it was a gift of money, and, the
estate of the testator being ample for its payment, after the
payment of debts, it was at his own peril that he received
choses in action, instead of money ; and that they have an
election, either to take such *choses*, or to hold him liable for
money, as if he had collected it. The duty of the trustee, if
he had received money, would have been its investment,
either in stocks, or by placing it at interest on good security.
If the testator had owned safe and productive stocks, which
came to his executors for administration, we can perceive no
reason for a rule which would prohibit the trustee from
taking such stock from the executors in satisfaction of the
legacy. He could, in the exercise of the power conferred,
have employed the legacy, if converted into money, in the
purchase of such stocks from the executors. It would have
been an idle ceremony, to have received money with one
hand, and paid it back with the other; as would have been
the transaction, if the executors had such stock, and the
trustee had compelled the payment of the money, and with
it purchased the stock from them. The executors had no
such stock, nor was there any safe and productive stock in
which the trustee could have invested, if the money had been
paid him. The domicile of the testator was here ; his estate,
real and personal, was situate here ; the will was of probate,
and the administration of the estate was here ; this was the
domicile of the trustee ; and it was necessarily contemplated
by the testator, that the legacy should be paid, and the trusts
executed here. By the state of things existing here when
the legacy was payable, when the executors had the right of
paying, and it was the duty of the trustee to receive, it must
be determined whether the trustee was acting discreetly in
receiving the choses in action in satisfaction of the legacy.
We can not concur in the view, that it was without his
authority to receive any thing else than money in its satis-
faction. He could not have taken a conveyance of real
estate ; for that would have been a conversion of the char-
Vol. lv.

acter of the thing given, and of the character of the gift; and though producing rents and profits, it would not have yielded dividends, or interest. Nor could he have received personal property, which could by a sale only be converted into an interest-bearing capital. But he could receive stocks, or other *choses in action*, in which he could have invested the money, if that had been in his hands for investment. In fact, the transaction is simply an investment of the legacy; and the same result is reached, that would have been reached, if the money had been paid to the trustee, and then invested in the choses in action received in the place of the money.

3. The trustee having authority to receive choses in action, as he could have purchased, the inquiry is, whether, in receiving them, and in their subsequent management, he has acted in good faith, and with reasonable diligence. The good faith of the trustee is not questioned; nor can it be doubted that, in his administration of the trust, he has been free from all selfishness, and solicitous only to discharge with fidelity the duties imposed on him. If he has erred, it has been unintentional, and because of the unfortunate circumstances surrounding him, and the perils of the times during which the trust was administered. It was not his duty to have deferred the collection of the legacy until the termination of the war; nor can we say, even now, that it would have been prudent to do so, or that, if he had, more would have been than has been realized for the *cestuis que trust*. The war did not relieve the executors from the duty of paying the legacy, nor lessen the authority of the trustee to reduce it to possession. It did not suspend the settlement of estates, or the succession to them. Accepting the trust, the duty was imperative to reduce the legacy to possession, as soon as it could be done properly. In the performance of this duty, something must be left to his discretion; and the condition of the estate, and the rights of others having equal claims on it, must be considered. There were other general pecuniary legacies contained in the testator's will, equally entitled with this legacy to payment, amounting to one hundred and forty-five thousand dollars. The payment of these could as well have been deferred, as the payment of this; and if all had been deferred, it is not probable so much could have been received on account of this, as has been realized and accounted for by the trustee. The only alternative left the trustee was the putting the legacy at interest. There were no stocks in which a safe and productive investment could be made. If this was not shown by the evidence, it would be vain for a court to disavow knowledge of a fact forming such a prominent part of public history. There

were no public securities marketable, except those of the State, and of the Confederate States, issued to aid in the prosecution of the war. These fluctuated in value, as. the fortunes of the battle-field varied; and when the war closed, the result was the destruction of the Confederate Government, and of its securities; and the State was compelled to a repudiation of its securities, and an interdiction of all compensation to the holders, though not *sui juris*—though idiots, or lunatics, or infants, or married women. If there were private corporate securities, falling within the term *stock*, as employed in this bequest, they were affected in value by the extraordinary circumstances and perils .of the times; and they have shared in the calamity which wrecked the industry and the greater part of the property of the State. We repeat, the course adopted by the trustee, putting the legacy at interest, was discreet and judicious, within the line of his authority, and, in fact, the only alternative left to him.

4. In what other mode, than that adopted by the trustee, could the money have been more safely put at interest? It is the investment in the Breitling note and mortgage alone, of which complaint is made. In determining the prudence of the trustee, it is a material fact that this was an investment made by the testator himself. It was a mode he adopted for the disposition and safe-keeping of money placed at interest. The security was of his own selection, when he had the absolute power of requiring "*good security*," to use the terms of the bequest. It is a general rule, more firmly established in this country than in England, that trustees, in the execution of trusts, not having knowledge of the facts rendering it imprudent, may adhere to the course pursued by the person creating the trust, while he had the property within his control and disposition.—3 Lead. Cases Eq. 474; Perry on Trusts, § 465; *Harvard College v. Amory*, 9 Pick. 446; *Estate of Esther Bond*, 1 Parsons' Eq. Cases, 524. This case does not require us to go further than to say, that the fact that the trustee is merely continuing an investment, made by the testator, is a material circumstance in his favor, in determining the prudence of his conduct—in acquitting him of negligence. All that can be exacted of him is diligence and fidelity in the discharge of his duties—the exercise of that prudence and care in the management of the trust, which men of ordinary prudence exercise in like business of their own. When the Breitling note and mortgage was accepted, that it was a safe investment of the trust fund, indeed a desirable investment, it is impossible to doubt. After the war, when the large number of slaves covered by the mortgage were emancipated, and lost as security, the

lands conveyed yielded at public sale more than the principal of the note. What other investment would have been less deteriorated in value? In the mean time, more than ten thousand dollars of the accumulated interest was paid. It was not possible, bound as the trustee was to the duty of investment, to have secured one more beneficial to the *cestuis que trust*—one in which the fund would have been more secure, and less liable to be lost. The trustee, if he had received money—gold and silver—in payment of the legacy, could not have converted himself into its mere custodian, burying it away in a napkin, until the war closed. The duty of investment was as imperative, as the duty of receiving; it was, indeed, the very purpose for which the duty of receiving was imposed. The time when the duty of investing devolved was inauspicious, and the choice of investments necessarily very limited. There were but few willing to contract debts, and fewer still who would venture on loans of money in large sums. If there were borrowers, they could have given no other or better security than of the kind attached to the Breitling note. It would be a harsh, if not a cruel judgment, that would now pronounce that the trustee had not observed the full measure of diligence the law requires, in accepting that note and mortgage as an investment of the trust fund.

5–6. The principal of the notes on Sledge & Compton and Breitling, amounting to forty-six thousand and eighty dollars, did not equal the amount of the legacy. It was the duty of the trustee to convert so much of the accrued interest into principal as would have made it equal to fifty thousand dollars. A reasonable time for such conversion was allowed him, and that time must be regarded as having elapsed, when in May, 1863, he made the collection of interest on the Breitling note. So much of the interest then collected must be added to the principal of the notes as will make fifty thousand dollars; and from that time the principal of the legacy must be computed as fifty thousand dollars. The remainder of the interest, and the subsequently accruing interest, is payable to the tenant for life. If, as the record indicates, this interest was collected in Confederate treasury-notes, and without fault on his part any portion of it perished in the hands of the trustee, under repeated decisions of this court, he is not answerable for the loss. In that state of facts, if the amount lost equalled, or exceeded, the amount necessary to be added to the principal of the notes, to make the legacy in principal amount to fifty thousand dollars, the deduction must be made from the principal of the legacy, reducing it again to the principal of the promissory notes.

If any of the Confederate notes lost remain, they must be deducted from the interest payable to the life-tenant.

7. The rule in this State is, that interest upon general pecuniary legacies is not payable until the lapse of eighteen months from the grant of letters testamentary.—*Hallett & Walker v. Allen*, 13 Ala. 554. The executors were in error, in paying the trustee interest on the legacy from the day of the testator's death. The error was carried into the final settlement of their administration, and they were allowed credit for the payment, as if it had been legally made. The lapse of time bars an appeal from, or any other revision of that settlement. They have not demanded any correction of the error, nor sought to recover from the trustee the overpayment; and if it is recoverable, a matter it is unnecessary now to consider, the statute of limitations is a bar to a recovery. A legal advantage has thus been obtained by the trustee, doubtless under mere misapprehension of the law on the part of the parties to the transaction; yet it is an advantage which must accrue to the trust estate, and with which it is not in his discretion to part. It is an inflexible rule, founded in public policy, that a trustee cannot convert himself into the adversary of the *cestui que trust*: he cannot deny, or set up an adverse title, to the title of the *cestui' que trust*. Perry on Trusts, § 465. Having in his fiduciary capacity received this excess of interest, though it was not legally payable, he must account for it. The chancellor, therefore, erred in decreeing that, in the statement of the account, the interest on the legacy should be computed only from eighteen months after the death of the testator. The trustee must be charged with all he has received. He should be charged with the notes of Breitling, and Sledge & Compton, as he received them from the executors. This excess of interest is payable to the life-tenant, after a sufficiency thereof has been converted into principal, in the mode we have stated, to make the principal aggregate fifty thousand dollars.

8. Having received the notes in satisfaction of the legacy, the duty devolving on the trustee was due diligence in their collection. Whether he has exercised it, depends on the particular facts of the case, the purposes of the trust, and the peculiar circumstances surrounding him. Until the war closed, there was no other than Confederate currency, in which collections could be made. Compulsory collections were suspended by the state of affairs which the war produced, and by laws which could not be resisted. Delays in collection during that time were unavoidable; and if loss resulted from them, personal liability cannot be visited on the trustee. The loss is not a consequence of his want of dili-

[Foscue v. Lyon.]

gence. No diligence on his part could have prevented it, and it is only his own misconduct which can involve him in personal liability.—2 Story's Eq. §§ 1268–1272 ; 3 Lead. Cases Eq. 468 ; *Dean v. Rathbone*,15 Ala. 328 ; *Gould v. Hayes*, 19 Ala. 438.

9. The trustee could properly have loaned the legacy, if in his hands in money, on mortgages of real estate. Such mortgages are regarded as good security ; and, perhaps, here, the least objectionable of securities trustees having money to loan can take. Ordinarily, in the absence of all evidence of facts showing the contrary, a loan or advance, not exceeding in amount two-thirds of the value of the real estate conveyed by the mortgage, is regarded as prudent ; and the trustee is not responsible for loss which may ensue from the subsequent deterioration in value of the premises.— Perry on Trusts, § 457 ; 3 Lead. Cases Eq. 450–453 ; *Twaddle's Appeal*, 5 Barr, 15 ; *Macleod v. Annesley*, 16 Beavan, 600 ; *Stickney v. Seawell*, 1 Myl. & Cr. 9. Whether the trustee was making a loan, or receiving parts of the purchase-money, in the arrangement with Curtis and Jones, the purchasers of the Breitling lands, is not material. Whatever may have been the form of the transaction, it was in fact an ·investment of the trust funds, within his authority. The investment did not exceed two-thirds the value of the lands, and was sanctioned by law, in the absence of evidence showing that the lands were not sufficient security.

10. The trustee certainly was without authority to change the character of the legacy. He could not convert it into realty. But, in the purchase of the " Calhoun plantation," the trustee was not making such conversion. The purchase was indispensable to save the trust fund from loss. Jones, the debtor, had fled the State ; all other property of his that could be reached for the payment of debts, had been subjected under legal process ; and whatever of the debt due from him the lands failed to pay, would have been a loss to the trust fund. Under these circumstances, the trustee not only had power, but it was his duty to purchase the lands, if he did not exceed their fair value. That he did not, is apparent from the fact, that, in a few days after the purchase, he was offered by solvent purchasers the price he gave for them. In Perry on Trusts, § 458, it is stated, and the authorities referred to support the statement, that in case of a grave emergency, a guardian may buy in land for the minor, to save a certain loss ; so, an administrator may buy in the land of a debtor to his estate, to save the debt. Such an investment is a mere temporary expedient, and it is to be treated as personal estate. In *Powell v. Stratton*, 11 Grat.

792, an administrator having in good faith purchased lands, sold for the payment of a debt due the estate he represented, the purchase being in his representative capacity, the land was treated as assets, and he was declared not liable for the price. The trustee, by this purchase, saved for the trust estate the land, which was the only security for the debt. No loss has resulted, except from the depreciation of its marketable value,—a depreciation resulting from the monetary condition of the country. We concur with the chancellor, that the land must be regarded as a part of the trust estate, and its purchase confirmed.

11. Nor is the trustee chargeable, because he did not make sale of the lands, when Siddons proposed purchasing of him. The rights of the *cestuis que trust* had then attached; and without the authority of a court of chancery, he could not make a sale, which would have bound them.

12. We think, if the trustee, in making payments to Mrs. Foscue, exceeded the interest, she is bound to protect him against loss, independent of an express promise to indemnify him. It is a general rule, that the *cestui que trust* ought to save harmless the trustee, who has honestly, without gain to himself, advanced or paid money for his benefit.—Perry on Trusts, § 458. Her right was to the annual interest realized, or which by due diligence the trustee could have realized, from the investment of the trust fund. If she has received more, the duty of refunding, either to the remainder-men, or the trustee, if he is charged because the principal has been invaded, is imposed by law.—Tiff. & Bull. on Trusts, 621; *Mills v. Mills,* 7 Sim. 501 (10 Cond. Eng. Chan. 168); *Williamson v. Williamson,* 6 Paige, 298. If the trustee had not resigned, he could have retained from the annual income and interest payable to Mrs. Foscue, until indemnified against loss, and the principal restored to the amount it would have been if it had not been diminished by the payments to her. Having resigned, and a suit pending in which she is a party complainant, for an account of the administration of the trust, the estate being in the custody of a receiver appointed by the court, it was competent to direct the receiver to apply the income and interest to the indemnity of the trustee. Thereby the principal will be restored, for the benefit of the remainder-men.

13. We incline to the opinion, that the supplemental cross bill was unnecessary, and that a petition was the proper mode of obtaining all the relief to which the appellee was entitled. It was said by Chancellor KENT, in *Codwise v. Gelston,* 10 Johns. 530, it is difficult "to draw a precise line, between cases in which a party may be relieved upon petition,

and in which he must apply more formally by bill. Petitions are generally for things which are matters of course, or upon some collateral matter which has reference to a suit in court." Whether relief shall be sought for by petition or bill, when it grows out of matters involved in a pending suit, rests largely in the sound discretion of the court. The parties here were all before the court; the pleadings in the suit put in issue their respective rights; the final decree will conclusively determine them; the trust fund is in the custody of a receiver, appointed in the suit, who is subject to the orders of the court. Applications for orders, partaking of the nature of decrees, or of decretal orders, in a pending suit, are usually made by petition.—1 Barb. Ch. 578. Such was the character of the order or decree, to which the appellee was entitled on the facts stated. This order would have been embodied in the final decree of the chancellor, confirming the report of the register ascertaining the balance due the appellee from Mrs. Foscue. It was not only competent, but it was the duty of the chancellor, on the confirmation of that report, to order the receiver to apply the income payable to Mrs. Foscue to the extinguishment of this balance. Justice to the remainder-men, and to the trustee, required it; and from the relation subsisting between them arises an equity to such an appropriation of the income accruing to her. Otherwise, she would take an interest in the trust fund, greater than that given her by the testator. The facts stated in the supplemental cross bill warranted an order on the receiver, operating as a special injunction, staying all payments to her until the further order of the court. The supplemental bill may well be treated as a petition in the original suit, and should be so regarded in the future progress of the cause. So regarding it, we will not disturb the decree of the chancellor overruling the demurrer to it, or refusing a dissolution of the injunction, so far as it restrained the receiver from making payment to Mrs. Foscue.

14. In refusing a dissolution of the injunction, so far as it operated on the real estate described in the supplemental bill, the chancellor erred. The fact that this real estate was purchased with the moneys the appellee had advanced to Mrs. Foscue, gives him no lien on it, nor an equity to charge it with the repayment of such moneys. As to it, he has no other rights than those of a general creditor. When he obtains a final decree against Mrs. Foscue, execution may issue on it, which can be levied on this, or any other property she may have, subject to levy and sale. But her employment of the money advanced her, in purchasing the real estate, creates no lien or trust. If he had from his own money

made a loan to her, that she might make a purchase of the lands, it would not be insisted that, from such a transaction, the law would imply a lien or trust on the land for the repayment of the money. This is the attitude of the appellee, so far as the real estate is concerned.

We have not had our attention called to any error in the specific instructions given the register, as to the manner of stating the accounts, or of separating the interest from the principal of the fund, at the different times when it is necessary such separation should be made, and the two carefully distinguished. After an examination of them, we think they are properly framed, and an observance of them will produce correct results.

The evidence discloses that Augustus Foscue, one of the remainder-men, has died. His personal representative is not made a party to the original bill; and it is wanting in averments which justify the court in proceeding to a final decree in the absence of such representative. The defect ought to be cured.

The result is, the decree on the original bill must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion. The decree on the supplemental cross bill is reversed, so far as it continues the injunction restraining Mrs. Foscue from disposing of the real estate therein described. In other respects, it is affirmed. The appellee must pay the costs of each appeal.