## COREY *vs.* CORNELIUS and others.

The effect of the 39th section of the act of 1831, to abolish imprisonment for debt and to punish fraudulent debtors, was to repeal so much of the provisions of the title of the revised statutes, relative to courts held by justices of the peace, as authorized the execution, issued in a suit commenced by attachment, where the defendant was not personally served with process and did not appear therein, to be levied upon *the goods and chattels of the defendant generally. That section also re-*pealed, by implication, so much of the provisions of that title, of the revised statutes, as made the filing of the transcript of such a judgment, in the county clerk's office, a lien upon the real estate of the defendant, and as authorized the county clerk to issue an execution, against such real estate, founded upon the filing of such transcript.

Judgments rendered by justices of the peace upon attachments which were not served on the defendant personally, and to which he did not appear, are not such judgments as will entitle the owner thereof to come into the court of chancery for relief; upon the return of the executions issued thereon, unsatisfied.

The remedy of the owner of such judgments is to bring new suits thereon; so as to give the defendant an opportunity to rebut the prima facie evidence of indebtedness, or to offset any demand which he may have. And if the plaintiff succeeds in obtaining new and general judgments, in those suits, he must proceed and exhaust his remedy against the real as well as personal estate of the defendant, by execution, before he can file a creditor's bill in the court of chancery.

By the first and second sections of the title of the revised statutes relative to executions, and the duties of officers thereon, in connection with the other provisions of those statutes relative to the docketing of judgments and decrees, the right to sell real estate, and chattels real, on executions upon judgments of courts of common law and upon executions founded upon decrees of the court of chancery, is placed *upon the same footing. And if the judgment or decree has been docketed, so as* to make it a lien upon lands of the debtor in the county to which the execution is issued, it will authorize the sale of the interest which he had in the land at the time of such docketing; if the time prescribed by law for the continuance of such lien has not expired.

But if the judgment or decree has not been docketed, the execution issued thereon will only authorize the sale of such interest as the debtor has in the land at the *time of the seizure and sale; subject to the rights of those who have acquired in-*terests in, or liens upon, such lands as purchasers, or incumbrancers, subsequent to the judgment or decree.

Although the 25th section of the act of May, 1840, relative to costs and fees in courts of law, &c., provides that no judgment or decree thereafter to be entered shall be a lien upon real estate, unless the same shall be docketed by the clerk of the county where the lands are situated, yet there is nothing in that act requiring a judgment *of the supreme court, or a decree of the court of chancery, to be docketed with the* clerk of the county where the real estate of the defendant is situated, to authorize the issuing of an execution against such real estate, to the sheriff of that county.

Corey v. Cornelius.

But as the process of courts of common pleas, and of the superior court of the city of New-York, does not, in ordinary cases, extend to other counties, it is necessary to have the judgment docketed in the manner prescribed in the 29th section of the act of May, 1840, to authorize such local courts to issue their executions to any other county than that in which such courts are held.

The act of May, 1840, does not, in terms, dispense with the docketing of judgments in the supreme court; in the manner prescribed by the revised statutes. Nor does it authorize the docketing of such judgments in the office of the county clerk, for the purpose of giving them a preference in payment out of the estate of the judgment debtor in case of his death. And *it seems*, it is necessary the clerks of the supreme court should continue to docket judgments in the manner prescribed in the revised statutes, to entitle such judgments to a preference over subsequent judgment creditors, in payment out of an insolvent estate.

THIS was an appeal from a decision of the vice chancellor of the fourth circuit, refusing to dissolve the usual injunction upon a creditor's bill, against P. Cornelius the judgment debtor. The bill was founded upon a judgment in the supreme court recovered in July term, 1842, for about $200; and upon three judgments obtained in justices' courts upon proceedings on attachments, on which last mentioned judgments there remained due something more than $200, after applying thereon the proceeds of the sale of the property of Cornelius, which had been attached. The bill alleged that the judgment in the supreme court, which was originally in favor of R. Zule, had been assigned to the complainant, and that the same had not been paid; but that the whole amount thereof, with interest, was actually and equitably due to him over and above all just claims of the defendant by way of set-off or otherwise. The bill also stated that the record of the judgment in the supreme court was filed in the office of the clerk of that court in Albany, on the 21st of September, 1842, and was docketed in his office on the same day. But the judgment did not appear to have been docketed in the clerk's office of any of the counties in this state, so as to make it a lien upon real estate of the defendant under the provisions of the act of the 14th May, 1840. In November, 1842 an execution was issued upon that judgment to the county of Montgomery, which, as the bill alleged, was the last known place of residence of Cornelius in this state. That execution directed the sheriff to levy the amount of the judgment of the

goods and chattels of the defendant, and if sufficient could not be found, that he should then cause the damages and costs to be made of the real estate in the county of Montgomery, of which the defendant was seized on the 21st of September, 1842, or at any time afterwards, in whose hands soever the same might be. The sheriff subsequently returned the execution wholly unsatisfied.

The defendant, in his answer, denied the justice of the judgment recovered against him by Zule, in the supreme court, and alleged that he had no recollection and did not believe that any declaration or process was ever served upon him in that suit; and that the judgment was obtained therein without his knowledge, while he was absent in Europe. He also set up several claims by way of offset against the complainants, and therefore denied that any thing was actually and equitably due upon such judgment. He likewise stated, upon information and belief, that the several judgments upon the attachments were irregular and void, and that nothing was due to the plaintiff in one of those judgments at the time of the recovery thereof. The answer further stated that the defendant Cornelius, on the 21st of September, 1842, and ever since, was and still continued to be the owner of lands and real estate in fee simple, in the county of Montgomery, out of which the amount of the judgment in the supreme court could have been collected, if a transcript of such judgment had been filed in the office of the clerk of that county, so as to make the judgment a lien on the said lands and real estate.

*A. C. Paige,* for the appellant. I. The whole equity of the complainant's bill is denied by the answer. The defendant (P. Cornelius) denies that any thing is due on the judgment recovered by Robert Zule. This denial is responsive to the bill. The defendant denies notice of the commencement of the suit by Zule, and denies that he authorized any one to appear for him in such suit. The judgment recovered therein is consequently void. Under such circumstances, the court having no jurisdiction of the person of the defendant, the judgment rendered is void. (*Borden* v. *Fitch,* 15 *John.* 121. 13 *Id.* 192.

6 *Wend.* 447.) The allegation in the record, that the defen‑
dant appeared by attorney, can be disproved by the defendant.
Complainant, by transferring the $80 note given by P. Corne‑
lius on settlement, to the Baldwins, deprived himself of all right
to claim any thing on the judgment. The purchase of the
judgment of Zule from French, being for the purpose of bring‑
ing a suit thereon, was in violation of article three, title two,
chapter three, of the third part of the revised statutes. The
complainant has not exhausted his remedy at law on the judg‑
ment recovered by Zule. His bill does not allege that the
judgment was docketed in the clerk's office of the county of
Montgomery, (the last known place of residence of the defen‑
dant,) so as to be a lien on his real estate in that county, and
to authorize the sale of such real estate under the same. Judg‑
ments in courts of record shall bind, and be a charge on lands
of persons against whom a judgment shall be rendered, which
such persons had at the time of docketing such judgment.
(2 *R. S.* 359, § 3.) And such real estate shall be subject to be
sold on execution to be issued on such judgment. No judg‑
ment shall affect any lands, &c. until the record be filed and
docketed. (2 *R. S.* 360, § 12. *See Laws of* 1840, *p.* 334,
335.) The remedy at law is not exhausted until an execution
has been taken out against the whole property of the defendant,
both real and personal. Thus a creditor's bill cannot be filed
on the return of an execution upon a justice's judgment unsatis‑
fied, which has not been docketed in the clerk's office. (*Dix*
v. *Briggs*, 9 *Paige*, 595.) A creditor's bill must show, affirma‑
tively, that the complainant has exhausted his remedy at law
by issuing an execution to the sheriff of the county where the
defendant resided when the execution was issued ; or the com‑
plainant must show a sufficient and legal excuse for not issuing
his execution to such county. (*Merchants' and Mechanics'*
*Bank* v. *Griffith*, 10 *Paige*, 519.) The case of *Youngs* v.
*Morrison*, (*Idem*, 325,) which holds that it is not necessary to
state in the bill the docketing of the judgment, &c., conflicts
with other cases; and the circumstances of that case are not
like this. Executions must be issued to the county where the

defendant resided when execution was issued. (*Reed* v. *Wheaton*, 7 *Paige*, 663.) The complainant must first exhaust his remedy at law. (2 *R. S.* 173, 4.) Here the remedy was not exhausted ; as the defendant had real estate in Montgomery county. No judgment can affect lands unless it is docketed, and thereby becomes a lien on the lands. And no real estate can be sold under a judgment, unless such judgment is a lien thereon. This is the doctrine of the revised statutes. The act of 1840, *p.* 334, provides that no judgment shall be a lien on real estate, unless the same is docketed in the clerk's office of the county where the lands are situated. This act substitutes the docket in the clerk's office of the county, in place of the docket in the supreme court. No docket is necessary in the supreme court, since the act of 1840. That act requires the judgment to be perfected in the supreme court only—and to be docketed in the county. At common law, lands were not liable to be sold on execution. (*Bingham on Judgments and Executions*, 102, 108. *Gilbert on Executions*, 9.) The revised statutes expressly provide that no judgment shall affect lands unless it be docketed. Unless a judgment is a lien, the owner of the judgment cannot redeem lands sold under a prior judgment. (2 *R. S.* 371.) The execution to be issued on a judgment, only authorizes the sheriff to sell the lands which the defendant had at the time of docketing the judgment. (2 *R. S.* 367, § 26.) Unless, therefore, the judgment has been docketed in the county clerk's office, so as to make it a lien, no lands can be sold under it. .The cases under the revised laws, (1 *R. L. of* 1813, *p.* 500,) which decide that a judgment properly docketed after ten years, ranks as a judgment junior to later judgments, and that the lien continues as against the defendant, do not apply ; as by the terms of the act, the lien only expired as to bona fide purchasers and junior judgments, and not as to the defendant. And a docket was not made necessary to affect lands, so far as the defendant was concerned. In this case no lien ever existed ; there having been no docket in the county. By the revised statutes, (2 *R. S.* 360, § 12,) a judgment, unless docketed, does not affect lands, as to any one.

II. The creditor's bill is not properly founded on the judgments recovered on the attachments. An attachment is a proceeding in rem against the property attached. It does not reach all the defendant's property. And the execution issued only runs against the property attached. (*Thomas* v. *The Merchants' Bank*, 9 *Paige*, 216.) It is like an execution on a justice's judgment not docketed in the clerk's office. (*Dix* v. *Briggs*, 9 *Paige*, 595.)

III. It does not appear by the complainant's bill that the justice's court had jurisdiction to render the judgments on the attachments. This is necessary. (*Dix* v. *Briggs*, 9 *Paige*, 597. Laws of 1831, *p.* 404, 5.)

IV. Two of the judgments recovered on the attachments were purchased by the complainant, with intent to commence a suit thereon.

V. The defendant denies that any thing is due on the judgment recovered by the complainant on attachment.

VI. If the defendant is not entitled to a dissolution of the injunction on the bill and answer, he asks for a dissolution upon giving security for the payment of the sum equitably due on the judgment recovered by Zule, in the event of the complainant's succeeding to establish that any thing is due, or recoverable thereon.

*D. P. Corey*, for respondent. An injunction upon a creditor's bill will not be dissolved unless the facts charged in the bill, and the whole equity of the bill, be denied positively and fully. A denial upon information and belief is not sufficient. (*Hopk. R.* 148. 1 *Paige*, 100. 5 *Id.* 112. 1 *Barb. Prac.* 640. 2 *John. Ch.* 204. 9 *Paige*, 502.) And even when the equity of the bill is denied, it is not a matter of course to dissolve the injunction, but it rests in the discretion of the court, to be governed by the nature of the case. (2 *John. Ch.* 204. 10 *Paige*, 502.) Any evasion in the answer in not responding to the charges in the bill, or improbable or contradictory statements in the answer, will induce the court to retain the injunction. (1 *Barb. Ch. Pr.* 640.) This answer is of that character. The answer of the

Corey *v.* Cornelius.

defendant Cornelius neither denies the facts charged, nor the equity of the bill, but sets up technicalities and evasions. A creditor's bill may be filed upon one or more justice's judgments that amount in the aggregate to $100 or over, after exhausting the remedy at law. (1 *Barb. Ch. Pr.* 148, 154, 159.) The bill shows the remedy at law exhausted upon all the judgments, by the return of executions unsatisfied; and the answer does not discover or point out any real estate liable to the execution on the judgment in the supreme court, but evades the discovery. Nor does the defendant answer fully as to his personal property. It was not necessary to file a transcript of the justice's judgments; as no lien could have been created thereby. Neither could any other property than that attached be sold under such executions; any more than choses in action could be sold under ordinary executions. (2 *R. S.* 203, § 298.) Still the court will assist such executions, (1 *Barb. Pr.* 152, 158,) without docketing the judgment. (*See* 10 *Paige*, 325.) This court is not authorized to inquire into the regularity of a judgment upon which a bill is founded. (1 *Barb. Ch. Pr.* 159, (*s*), *&c.*)

THE CHANCELLOR. Upon a careful examination of the answer in this case, I am satisfied the appellant did not intend to state positively that he was never served with process, or with a copy of the declaration in the suit in the supreme court. It is not necessary, therefore, to consider the question whether it is . competent for the defendant, upon a creditor's bill filed in this court, to question the validity of the judgment, or the right of the attorney to appear for him in the court at law. Upon principle, however, I think the remedy of the defendant, if any, is by an application to the supreme court to set aside the judgment; or by an action against the attorney who has appeared for the defendant in that suit without authority, if such appearance would have the effect to make the proceedings in that suit regular without the service of process. If the judgment is to be considered as valid in this court, I do not understand the answer to contain a denial that the whole amount for which it was given is still due and unpaid. And the defendant is not in a situation

to avail himself of the alleged offset, against the complainant, upon this motion to dissolve the injunction. The defendant himself cannot know whether the complainant was guilty of any breach of professional duty in not applying the $100 in settling the claim of Zule. The fact that Zule claimed and actually recovered a sum much beyond the $100, in that suit, exclusive of the costs, is sufficient to raise a presumption that he would not have accepted the sum which the defendant says was left with the attorney to pay the claim. And the fact that the attorney afterwards claimed to be the owner of and actually sold the note which the defendant says he gave to Zule upon the settlement with him, is no evidence that the attorney came into the possession of that note wrongfully, and without a full consideration paid to the holder thereof. It becomes necessary, therefore, to inquire whether the complainant was in a situation to file a creditor's bill upon either of the judgments mentioned in the pleadings and proofs in this cause.

The 39th section of the act of 1831, to abolish imprisonment for debt and to punish fraudulent debtors, (*Laws of* 1831, *p.* 405,) declares that a judgment, before a justice, in a suit commenced by attachment, where the defendant is not personally served with process and does not appear, shall be only presumptive evidence of indebtedness, in any suit that may be brought thereon ; and may be repelled by the defendant. The same section also declares that the execution issued upon such judgment shall not be levied upon any other property than such as was seized under the attachment ; nor shall the defendant be barred of any set-off he may have against the plaintiff. The revised statutes only authorized the goods and chattels of the defendant to be seized under an attachment issued by a justice ; but did not authorize such attachment to be served upon real estate of the defendant. (2 *R. S.* 230, § 30.) The effect of the 39th section of the act of April, 1831, therefore, is to repeal so much of the provisions of the title of the revised statutes, relative to courts held by justices of the peace, as authorized the execution, issued in a suit commenced by attachment, where the defendant was not personally served with process and did not appear

Corey *v.* Cornelius.

therein, to be levied upon the goods and chattels of the defendant generally. And it also repeals, by necessary implication, so much of the provisions of that title of the revised statutes as made the filing of the transcript of such a judgment, in the county clerk's office, a lien upon the real estate of the defendant; and authorized the county clerk to issue an execution against such real estate, founded upon the filing of that transcript. The several judgments, stated in the complainant's bill, founded upon attachments which were never served on the defendant personally, and to which he did not appear, are not such judgments as would entitle the owners thereof to come into this court for relief, upon the return of the executions unsatisfied, even if the transcripts thereof had been filed in the office of the clerk of the county within which such judgments were recovered. The remedy of the complainant, as the owner of those judgments, is to bring new suits thereon; so as to give the defendant an opportunity to rebut the prima facie evidence of indebtedness, or to offset any demand he may have which is a proper subject of offset. And if the complainant succeeds in obtaining new and general judgments, in those suits, he must proceed and exhaust his remedy against the real as well as the personal estate of the defendant, by executions on such new judgments, before he will be entitled to come into this court for relief, and to obtain satisfaction out of property which he is unable to reach by such executions.

It remains for me to examine the question, whether an execution could be issued upon the judgment in the supreme court, under the provisions of the revised statutes and of the act of May, 1840, which could authorize the sale of the real estate of the defendant; such judgment never having been docketed, in the county where the execution was issued, so as to make the judgment a lien upon the defendant's real estate in that county. When the case of *Youngs* v. *Morrison*, (10 *Paige's Rep.* 325,) was before me, upon an appeal from the decision of one of the vice chancellors overruling a demurrer to the complainant's bill, I was not aware that the provisions of the revised statutes as to the rights of judgment creditors to sell the real estate of the debtors, against whom judgments had been recovered in courts

of record, were materially varied from the language of the statute on that subject as it previously existed. I have, therefore, supposed that the effect of the 25th section of the act of May, 1840, requiring judgments and decrees to be docketed with the clerk of the county in order to make them liens upon the real estate of the debtor in such county, left the right of the plaintiff unimpaired to sell the real estate of the defendant upon execution, except as against bona fide purchasers or incumbrancers. The argument in the present case, however, has led me to reconsider the question, and I will now state the result of my re-examination of the subject.

It is well known to every lawyer, that the real estate of a judgment debtor could not, by the common law, be taken in execution. The only remedy of the creditor was by a writ of *fieri facias* against the goods and chattels of the defendant in the judgment, or, by a *levari facias*, to levy the debt by the sale of his goods and the seizure of the accruing profits of his lands. But in 1285, the statute of Westminster, 2d *Ch.* 18, was passed, giving to the creditor a writ of *elegit* upon his judgment; by which writ the sheriff was directed to deliver the goods of the defendant, at an appraisal, in payment of the judgment; and if that was not sufficient, he was also to deliver to the creditor a moiety of the freehold lands. Under this statute, the courts held the judgment to be a lien upon the land of the defendant from the first day of the term of the court in which such judgment was obtained. This relation back, of the judgment, to the first day of the term, was found to be unjust as against bona fide purchasers of the land before the judgment was actually entered. And in 1677, the act for the prevention of frauds and perjuries, (29 *Ch.* 2, c. 3,) required the judge who signed the record of the judgment, to specify the time of signing the same in the margin of the record. That act also provided that such judgment, as against bona fide purchasers of the land of the judgment debtor, should not relate to the first day of the term, but should only be considered as a judgment from the time of signing thereof. Fifteen years afterwards, the statute 4th and 5th William & Mary, c. 20, required judgments to be docketed; and declared

Corey *v.* Cornelius.

that judgments not docketed should not affect lands or tene-
ments as against purchasers or mortgagees, or have any prefer-
ence against heirs, executors or administrators, in the adminis-
tration of their ancestor's, testator's or intestate's estates.    When
the act of the 5th George 2d, c. 7, subjected all lands in the col-
onies to sale upon execution against the owners of such lands,
upon judgments obtained in the colonial courts of record, the
same principle of constructive lien from the time of the signing
of the judgment, was applied to all the freehold lands of the de-
fendant within the reach of the process of the court, by the
judges in this and other colonies.    That act was repealed in this
state in the revision of 1787, which, in terms, repealed all En-
glish statutes that had previously been in force here.    But its
provisions were retained in the revised act of the 19th of March,
1787.  (1 *Greenl. Laws*, 407.)    The first section of that act de-
clared that the lands and tenements, and real estate of every
debtor, should be liable to be sold upon execution on judgments
recovered in courts of record.    The second section required the
time of signing of the record to be specified, and directed the
clerk of the court to mark the time of filing the record upon the
same.    It further declared that no judgment should affect any
lands or tenements, *as to purchasers or mortgagees, or have any
preference in the administration of the estates of deceased per-
sons,* but from the time of the actual filing of the record of such
judgment.    And the third section contained a re-enactment, in
substance, of the provisions of the 4th and 5th William & Mary,
c. 20, relative to the docketing of judgments, and the consequen-
ces of an omission to docket the same.    The seventh section
prescribed the form of the execution ; which was, that if suffi-
cient goods and chattels of the judgment debtor could not be
found to satisfy the debt and costs, that the sheriff should cause
such *debt and costs to be made of the lands and tenements*
whereof the judgment debtor was seized on the day *when such
lands became liable to the debt,* (specifying the time,) or at any
time afterwards, in whose hands soever the same might be.
The same provisions were contained in the revision, of 1801, of
the act concerning judgments and executions.    (1 *R. L. of* 1801

*p.* 388.) The revised act of 1813 contained the same provis-
ions, except; that in the first section of that act it is, in terms,
declared that the judgment shall be a lien upon the lands, tene-
ments and real estate of the judgment debtor. The uniform
practice under these several acts, has been, so far as my knowl-
edge extends, to direct the sheriff to cause the debt and costs to
be made of the lands and tenements whereof the judgment
debtor was seised upon the day of the filing of the judgment
record, specifying that time in the execution, whether the judg-
ment had or had not been docketed at the time of issuing such
execution. And it will be seen by a reference to these several
statutes, that the clerk was not required to docket the judgment
immediately upon filing the record, though he was bound to
docket the same during the term in which it was entered, or
within six days thereafter. And by those statutes, the right to
sell the land upon execution; as against the debtor himself, did
not depend upon the question whether the judgment had or had
not been docketed. But the real estate became liable to be sold
upon the execution to be issued on such judgment, the mo-
ment the judgment record was filed in the office of the clerk of
the court; after it had been signed by the proper officer; though
as against subsequent purchasers and mortgagees, the title ac-
quired by the sheriff's sale did not relate back to the filing of
the judgment record, unless the judgment had been properly
docketed within the time allowed by law for that purpose. It
may also be proper to remark, that in 1802; the legislature, for
the first time, authorized the court of chancery to enforce its de-
crees by execution against the goods and chattels, lands and ten-
ements of the person against whom such decree was made. No
provision, however, was made for the docketing of such decrees.
But the fourth section of the revised act of 1813, concerning the
court of chancery, contained a provision that the goods or chat-
tels, lands or tenements, should not be bound, as against a bona
fide purchaser, until an actual levy or seizure by virtue of the
execution. And the form of the execution, as settled by this
court; pursuant to the provisions of that act; directed the sheriff
to levy the amount of the decree of the lands and tenements of

the debtor generally, in case the personal property was insufficient for that purpose, without any reference to the date of the decree; leaving the question of priority as between the purchaser under such execution and decree, and other creditors of the defendant by judgment or decree, to be settled by the general principles of law in such cases.

It is insisted by the counsel for the appellant, in the present case, that the revised statutes have entirely changed the previous law on the subject of sales of real estate, and of chattels real, so that no sale thereof can now be made by virtue of an execution issued upon a judgment of a court of common law, until such judgment has been actually docketed; so as to make it a lien upon such real estate or chattels real, as against subsequent purchasers or incumbrancers. And I admit that the third section of the title of the revised statutes relative to judgments, (2 *R. S.* 359,) when taken in connection with the twenty-fourth section of the title relative to executions, and the duties of officers thereon, (*Idem*, 367,) which prescribes the form of the execution to be issued out of the courts of common law, appears to indicate an intention to change the former law upon the subject, so as to make the docketing of the judgment an absolute prerequisite to the exercise of the power to sell the defendant's real estate upon execution. As no power existed at the common law to sell freehold estate upon execution, such would be the necessary effect of these provisions as to the defendant's freehold lands, upon the repeal of all the former statutes authorizing such sales, if the revised statutes had not, by other sections, authorized the issuing of an execution against the lands and tenements and chattels real of the judgment debtor generally; and without any other qualification of the right, than that the record of the judgment shall be filed before the issuing of such execution. Such a right, however, is given by the first and second sections of the title relative to executions and the duties of officers thereon. (2 *R. S.* 363.) And I think the effect of these sections, in connection with the other provisions of the revised statutes relative to the docketing of judgments and decrees, was to put the right to sell real estate and chattels real, on executions

Corey v. Cornelius.

upon judgments of courts of common law, and on executions founded upon decrees of this court, on the same footing. That is, if the judgment or decree has been docketed, so as to make it a lien upon lands of the debtor, in the county to which the execution is issued, it will authorize the sale of the interest which he had in the land at the time of such docketing; if the time prescribed by law for the continuance of such lien has not expired. But if it has not been docketed, it will only authorize the sale of such interest as the debtor has in the land at the time of the seizure and sale; subject to the rights of those who have acquired interests in, or liens upon, such lands, as purchasers or incumbrancers subsequent to the judgment or decree. The twenty-fifth section of the act of May, 1840, (*Laws of* 1840, *p.* 334,) provides that no judgment or decree, thereafter to be entered, shall be a lien upon real estate, unless the same shall be docketed, in books to be provided and kept for that purpose, by the clerk of the county where the lands are situated. But there is nothing in that act requiring a judgment of the supreme court, or a decree of the court of chancery, to be docketed with the clerk of the county where the real estate of the defendant is situated; to authorize the issuing of an execution, against such real estate to the sheriff of that county. But as the process of courts of common pleas, and of the superior court of the city of New-York, does not in ordinary cases extend to other counties, it is necessary to have the judgment docketed in the manner prescribed in the 29th section of the act of 1840, to authorize such local courts to issue their executions to any other county than that in which such local courts are held. It may also be proper to state that the act of May, 1840, does not in terms dispense with the docketing of judgments in the supreme court, in the manner prescribed by the revised statutes. Nor does it authorize the docketing of such judgments in the office of the county clerk, for the purpose of giving them a preference in payment out of the estate of the judgment debtor, in case of his death. And it may, therefore, be necessary that the clerks of the supreme court should continue to docket judgments in the manner prescribed in the revised

statutes, to entitle them to a preference over subsequent judgment creditors, in payment out of an insolvent estate. (*See* 2 *R. S.* 87, § 27. *Idem*, 360, § 12.)

In this case the bill alleges that the judgment in the supreme court was docketed in the office of the clerk of that court, at Albany, on the 21st of September, 1842. That was sufficient, therefore, to authorize the execution to be issued in the form it was; although the neglect to docket it also in the county of Montgomery, prevented its operating as a lien on the real estate of the defendant in that county. The issuing of the execution to the county in which the defendant last resided, and the return of that execution unsatisfied, is sufficient to sustain the injunction, and to authorize a decree in this suit for the amount of the judgment in the supreme court, with interest and costs. The order appealed from is therefore not erroneous; and it must be affirmed with costs. Under the circumstances of this case, however, it must be affirmed without prejudice to the right of the defendant to apply to the vice chancellor to dissolve the injunction upon paying into court the amount of the judgment of the supreme court, · with interest thereon, and giving security for such costs as may be recovered against him in this suit; with liberty to the complainant to take such money out of court upon the usual security to refund, if he does not eventually succeed in obtaining a decree for the amount thereof.