Van Hoesen, J.
The plaintiff’s capacity to sue was sufficiently proved by the production of the petition, the order appointing him receiver of the New York Collar Company, and his official bond (Potter v. Merchants’ Bk., 28 N. Y. 641).
It was unnecessary to prove the facts upon which rested the power of the supreme court to appoint him a receiver, for the power of appointing a receiver of a corporation after the return of an unsatisfied execution, though conferred by statute, is deemed to be within the general jurisdiction of the court (Bangs v. Duckinfield, 18 N. Y. 592). Nor was it necessary to prove that a transcript of the judgment of the marine court has been filed in the county clerk’s office. It was sufficient that the judgment was docketed in the office of the clerk of the marine court. An execution under which real estate may be levied upon and sold may run directly from the marine court without the docketing of the judgment in the office of the county clerk. The filing of a transcript with the county clerk is only necessary where it is sought to *29 establish a lien upon real estate. Real estate may be sold under an execution though no lien existed upon it prior to the levy (Corey v. Cornelius, 1 Barb. Ch. 571; Young v. Morrison, 10 Paige, 325; L. 1875, c. 478, §§ 52, 53; 2 R. S. 360, §§ 11, 12, 13).
I repeat, therefore, that the plaintiff’s capacity to sue is beyond question. It appeared from the testimony that the defendant had sold property belonging to the New York Collar Company to the amount of $374.82. Of that amount $213.34 actually came into the defendant’s hands. The remainder, $161.48, was paid out by Major Peter Bowe, auctioner, for expenses. Those expenses were as follows :
Auctioneer’s commissions . . $37.48
Advertising,.....12.00
Storage and insurance, . . . 36.00
Labor,......10.00
Cartage, . . ... . . 66.00
Total......$101.48
For the $213.34 which came into the defendant’s hands he accounts for the following:
Paid the amount of the execution, $121.61
Poundage,.....6.33
Levy, . . . . -. 1.00
Posting notices, . . . 1.00
Attending sale, . . . 1.00 '
Keeper, . ... 15.00
$145.94
For the difference between $213.34 and $145.94 he is not able to give any account whatever. Allowing the defendant all the costs he claims, he is neverthe'less short $67.40. Notwithstanding that fact, he boldly swears that he lost money in collecting the *30 execution. In the effort, to show how the money was lost he attempted to claim as disbursements of his own the outlay of $66.00 for cartage, and of $10.00 for labor, which was made by Bowe as auctioneer. Upon the defendant’s own figures, and conceding the propriety and legality of every disbursement made, I should be bound to render judgment against him for $67.40, with interest from January 8, 1876, the time the money was demanded from him by Mr. Signor. But on looking over the disbursements, it appears that the defendants allowed to the auctioneer, as commissions, ten per cent, on the gross amount of the sale ; $66 for carting nine truck-loads of paper collars, cutters, dies, shafting, bars, and empty boxes, from Center street to Clinton place—more than $7 per load ; $36 for storage and insurance for three or four days, and $10 for labor, in addition to the $66 for cartage. The law fixes the auctioneer’s fees at 2% per cent., unless a written agreement for a larger compensation is made, and there is no pretense that there was any written agreement here. These extravagant outlays prove, beyond all question, the intent of the defendant to absorb the fund realized at the sale. He had been a marshal for several years, and certainly knew what charges he could lawfully make. He, nevertheless, determined to make it cost $250 to collect for the execution creditor, $121. When these things are made plain to the court, the marshal need expect no indulgence. He must be held to the allowances and fees prescribed by law. Upon the trial, he endeavored to shelter himself behind a pretended authority which he swore he received from the president of the Collar Company, to incur and make these extraordinary and uncalled-for expenditures. His testimony on the trial is, however, in palpable contradiction of what he swore to on the examination before trial; and I have no hes *31 itation in saying that I do not believe that Timberlake, the president of the company, ever gave him authority to pay these large sums out of the company’s exhausted treasury. I am not, moreover, unmindful of the fact that, whilst on the stand, the defendant attempted to charge twice over, the items for cartage and labor. I reject, therefore, utterly and entirely, the statement that any of these charges were authorized by anybody.
The charges of the the defendant are the same as those of the sheriff in Crofutt v. Brandt, 13 Abb. A. S. 135.
Percentage, 2% per cent, on $121.61, $3.02
Advertising,..... 2.00
After advertising, and before sale, . 1.00
Receiving execution, 50
Returning execution, 12%
Mileage,...... 10
$7.74%
This must be deducted from $253.20, the balance remaining after deducting the amount of the execution from the sum received at the sale, and there must be judgment in favor of the plaintiff for the difference —$246.43, with interest thereon from January 8, 1876.