James H. Dunham et al., Respondents, *v.* Bernard Reilly, Late Sheriff, etc., Appellant.

The provision of the Marine Court act of 1875 (§ 53, chap. 479, Laws of 1875), in reference to the issuing of execution to the sheriff upon a judgment of a Marine Court of the city of New York, having been repealed by the repealing act of 1877 (Chap. 318, Laws of 1877), the provisions of the Code of Civil Procedure (§§ 1365, 1369), in reference to executions issued out of a court of record to a sheriff after September, 1877, control executions so issued out of said court.

Where, therefore, an execution was issued out of said court to the sheriff without first having a transcript of the judgment filed and the judgment docketed in the county clerk's office, as required by the said Code (§ 1365), before execution can be issued, which execution did not contain the recitals required by the Code (§§ 1367. 1369), and where the judgment was not docketed during the life of the process, *held,* that the same was void; and that an action against the sheriff for a false return thereon was not maintainable.

*Stoutenburgh* v. *Vandenburgh* (7 How. Pr. 229); *Blivin* v. *Bleakley* (23 id. 124) distinguished.

The doctrine that an officer who receives process, and, treating it as valid, proceeds to execute it, cannot allege its defective character, applies where the defect is capable of amendment, and may be waived, and the process is merely irregular, but does not apply where it is wholly void.

*Dunham* v. *Reilly* (47 Hun, 241) reversed.

(Argued June 19, 1888; decided October 2, 1888.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 23, 1888, which reversed a judgment in favor of defendant, entered upon an order sustaining a demurrer to plaintiffs' complaint and which overruled said demurrer. (Reported below, 47 Hun, 241.)

The substance of the complaint is set forth in the opinion.

*Henry Thompson* for appellant. The executions were issued illegally, and in contravention of the statute. (Code of Civ. Pro., chap. 13, §§ 1365, 1369.) The provisions of chapter 13 of the Code of Civil Procedure apply to these executions issued out of the Marine Court on the 6th day of Janu-

ary, 1879. (Laws of 1877, chap. 417, § 1, subd. 49, § 5.) The
Marine Court is a court of record. (Code of Civ. Pro. § 2,
subd. 15; Laws of 1872, chap. 629, § 1.) The executions,
having been issued against the prohibition of the statute
(§§ 1365–1369), were void. (*Fischer* v. *Langbein*, 103 N. Y.
84.) The Marine Court had no power to award execution,
and acquired no jurisdiction to issue any in this particular case,
without first filing transcript and docketing its judgment in
the county clerk's office. (*Wright* v. *Nostrand*, 94 N. Y. 31.)
A judgment docketed is notice to everybody. (Freeman on
Executions, § 24.) A plain disregard of a statutory inhibition
renders process void. (*Place* v. *Riley*, 98 N. Y. 1; *Reid* v.
*Stegman*, 99 id. 647; *Carpenter* v. *Willet*, 1 Abb. Ct. App.
Dec. 312; *Cornell* v. *Barnes*, 7 Hill, 35; *Earl* v. *Camp*, 16
Wend. 567.) The executions being void, no cause of action
can arise thereon against the officer in favor of the plaintiffs.
(Crocker on Sheriffs, § 284; Freeman on Executions, §§ 14, 24;
*Bergman* v. *Noble*, 19 Abb. N. C. 67; *Newbury* v. *Mun-
shower*, 29 Ohio St. 617; 23 Am. Rep. 769; *Beach* v. *Bots-
ford*, 1 Doug. [Mich.] 204; *Reid* v. *Stegman*, 99 N. Y. 647;
*Place* v. *Riley*, 98 id. 1; *Carpenter* v. *Willet*, 1 Abb. Ct. App.
Dec. 312; *Cornell* v. *Barnes*, 7 Hill, 35, *Prime* v. *Ander-
son*, 29 Hun, 644.) There is no estoppel that can be invoked
against the officer. (*Carpenter* v. *Willet*, 1 Abb. Ct. App.
Dec. 312; *Earl* v. *Camp*, 16 Wend. 561.) An execution to
issue properly to a sheriff must be preceded by the filing of a
transcript and the docketing of the judgment in the county
clerk's office. If the execution went to a marshal, it must be
before transcript filed, etc., and the creditor must make his
election previous to issuing the process. (*Oberwarth* v.
*McLean*, 52 How. Pr. 491.)

*Osborn E. Bright* for respondents. The sufficiency of the
executions is to be determined by the Marine Court act of 1875
(Laws of 1875, chap. 479, §§ 52, 53), and not by sections 1365
and 1369 of the Code of Civil Procedure. (Laws of 1872,
chap. 629, §§ 1, 2, 8; *Oberwarth* v. *McLean*, 52 How. Pr. 491;

*S. C.,* 7 Daly, 70 ; *Palmer* v. *Clark,* 4 Abb. N. C. 25.) The claim that the enactment of sections 1365 and 1369 operated as an implied repeal of section 53 of the Marine Court act of 1875, is opposed to well settled principles of statutory construction. (*People* v. *Mallory,* 2 T. & C. 76 ; *Mark* v. *State,* 97 N. Y. 572.) A special statute providing for a particular case, or applicable to a particular locality, is not repealed by a statute general in its terms and application, unless the intention of the legislature to alter the terms of the special law is manifest, although the terms of the general act would, if taken strictly, and but for the special law, include the cases provided for by it. ( *Vandenburgh* v. *Greenbush,* 66 N. Y. 1 ; *In re Central Park,* 50 id. 493 ; *Bartels* v. *Cunningham,* 59 How. Pr. 129 ; *Ross* v. *Wigg,* 36 Hun, 107 ; *McKenna* v. *Edmunston,* 91 N. Y. 231 ; *Roof* v. *Meyer,* 8 Civ. Pro. Rep. 60.) The defendant having treated the execution as valid process and levied upon property, cannot avail of the alleged irregularity to escape liability for a false return of no property. (Freeman on Executions, §§ 24, 25 ; *Stephens* v. *Browning,* 1 Code Rep. 123 ; *Stoutenburgh* v. *Vandenburgh,* 7 How. Pr. 229 ; *De Agreda* v. *Mantel,* 1 Abb. Pr. 130, 135 ; *Walden* v. *Davison,* 15 Wend. 575, 578 ; *Hinman* v. *Brees,* 13 Johns. 529 ; *Bank* v. *Hallett,* 8 Cow. 192 ; *Parmalee* v. *Hitchcock,* 12 Wend. 96 ; *Ames* v. *Webbers,* 8 id. 545 ; *Grosvenor* v. *Hunt,* 11 How. Pr. 355 ; *Bank* v. *Spencer,* 18 N. Y. 150 ; *Roth* v. *Schloss,* 6 Barb. 308 ; *Bacon* v. *Cropsey,* 7 N. Y. 195 ; *Abels* v. *Westervelt,* 24 How. 284 ; *Blivin* v. *Bleakley,* 23 How. 124 ; *Douglas* v. *Haberstro* [Ct. of App., April, 1882] 2 Civ. Pro. Rep. 186, 188.) Under the merely mandatory provisions of the previous Code and of the Revised Statutes, it was held that an execution issued under these circumstances was voidable, but not void, and that the sheriff in an action for an escape could not avail of the irregularity. (*N. Y. Guaranty Co.* v. *Rogers,* 71 N. Y. 377 ; *Hall* v. *Ayer,* 19 How. Pr. 91 ; *Hutchinson* v. *Brand,* 6 id. 73 ; *Hinman* v. *Brees,* 13 Johns. 529 ; *Renick* v. *Orser,* 4 Bosw. 384 ; *Marks* v. *Townsend,* 97 N. Y. 590, 601.) The defendant is estopped from questioning the regu-

larity of process which he has treated as valid, and under which he has levied. (*James* v. *Gurley*, 48 N. Y. 163, 167; *Bensel* v. *Lynch*, 44 id. 162.)

FINCH, J. The question in this case arises upon a demurrer. The complaint sets out what is claimed to be a cause of action against the defendant, who was sheriff of the city and county of New York, for a false return. It avers that, on the 6th day of January, 1879, the plaintiffs recovered four judgments against one Rogers and others, in the New York Marine Court, which were duly filed in the office of the clerk of said court, but transcripts of which were not filed, nor said judgments docketed in the office of the clerk of the city and county of New York until the 9th day of January, 1880; that on said 6th day of January, 1879, executions on said judgments were issued to the sheriff of said city and county in the usual form of executions against property; that on the 8th day of March, 1879, these executions were returned by the sheriff *nulla bona*, which return was false. The demurrer interposed to this complaint raises the question of the validity of the executions issued to the sheriff, and, if invalid, whether they were wholly void or merely irregular or voidable, and whether their defective character relieves the sheriff from liability for the falsity of the return. The Special Term sustained the demurrer, but the General Term reversed that judgment, and pronounced the executions valid and regular. This result was reached by holding that the validity of the process was determined by the Marine Court act of 1875 (Chap. 479, § 53), and not by the provisions of the Code of Civil Procedure (§§ 1365, 1369), and that is the first and principal inquiry in the case.

The act of 1875, was expressly repealed in the repealing act of 1877, except section 41 and sections 43 to 52 inclusive, and sections 54 and 55. (Laws of 1877, chap. 417, § 1, subd. 49.) This repeal blotted out section 53 of the act of 1875, which is the provision relied upon, and which enacted that the execution on any judgment of the Marine Court must be

directed to the sheriff, although it also permitted execution to
be issued to any one of the marshals of the city, but limited
their power to the levy upon and sale of personal property
only. Under this section it had been held, by the Common
Pleas, that an execution upon a judgment of the Marine
Court might issue at once to the sheriff, and a transcript and
docket in the county clerk's office were only necessary to effect
a lien upon real estate. (*Palmer* v. *Clark*, 4 Abb. N. C. 25.)
The repeal of section 53 of the act of 1875, however, carried
down with it the authority derived from that section, and
deprives the conclusion of the General Term of the founda-
tion upon which it was built. When the executions against
Rodgers were issued their validity could gain no support from
a statute which had been repealed, and we must look elsewhere
for the authority by which they are to be tested. The repeal-
ing act of 1877 was of course, intended to dispense with
statutes made needless by or inconsistent with the Code of
Civil Procedure, the first thirteen chapters of which were
passed at the previous legislative session. By that Code the
issue of executions by courts of record was regulated. The
Marine Court was a court of record (Laws of 1872, chap. 629,
§ 1; Code Civ. Pro. § 2, subd. 15), and so its final process was
brought within that regulation. (Code Civ. Pro. chap. 13,
§§ 1365 and 1369.) The Code, by its terms, was to take effect
on the first day of May, 1877. The temporary act of 1876
(chap. 449), was passed to explain, define and regulate the
application of the Code, and contained this provision:
" Chapter thirteenth applies only to an execution issued on or
after the 1st day of May, 1877, out of a court of record, other
than an execution issued out of such a court and directed,
pursuant to law, to a marshal or constable, and to sales and
other proceedings by virtue of an execution directed to a
sheriff, and delivered to him after that date." Both the Code
and the temporary act were suspended in their operation until
the 1st day of September, 1877, but, on that day, went into
effect. At that date the situation was this: The fifty-third
section of the Marine Court act of 1875, regulating the issue

of its executions had been repealed; chapter 13 of the new Code had been made applicable to all executions issued out of any court of record, other than those issued to a constable or marshal, and so governed all executions issued out of a court of record to a sheriff, on and after September 1, 1877; and the executions issued in 1879, to the present defendant, were, therefore, controlled by the provisions of the Code. Its last nine chapters were passed in 1880, and section 3347 in subdivision 10, contains a repetition, in precise words, of the provision we have cited from the temporary act; and the General Term concede that in the year 1880 there was a repeal of the act of 1875, and which brought Marine Court executions, issued to the sheriff, within the control of the Code. The mistake was in the supposition that such change never took place until 1880, whereas, as we have seen, section 53 of the act of 1875, was expressly repealed in 1877, and section 3347 of the Code was only a repetition of the previous identical enactment in the temporary act of the same year. The error is quite excusable in view of the confused tangle of legislation on the subject, and, more especially, because by the repealing act of 1880, chapter 479 of the Laws of 1875, with the exception of a single section, is repealed generally, without allusion to the circumstance that most of its sections had been destroyed by express enactment three years earlier. It follows, necessarily, that the right to issue the executions, for a false return of which the sheriff is sued, must be tested by the provisions of the Code.

Those provisions are quite explicit and peremptory. By section 1365 it is enacted that executions against property " *can* be issued *only* to a county in the clerk's office of which the judgment is docketed." The power to issue the process is given where in some county there is the prescribed docket, and only in that event. The language seems to involve both an authority and a prohibition; an authority where the judgment is docketed in any county to issue the execution to that county; and a prohibition, couched in the word " only " against any such issue to a county in whose clerk's office there is no such docket. The further provisions which regulate the form

and dictate the contents of the execution are framed in harmony with this prohibition and on the assumption that it would be obeyed. Section 1367 directs that "where an execution is issued out of a court, other than that in which the judgment was rendered, upon filing a transcript of the judgment rendered in the latter court, it must also specify the clerk with whom the transcript is filed and the time of filing, and it must be made returnable to that clerk;" and section 1369 enacts that "an execution against property must, if the judgment-roll is not filed in the clerk's office of the county to which it is issued, specify the time when the judgment was docketed in that county." The execution issued to the sheriff in this case violated all these essential provisions and fell within the definition of void process given in *Fischer* v. *Langbein* (103 N. Y. 84), which was "such as the court has no power to award, or has not acquired jurisdiction to issue in the particular case, or which does not, in some material respect, comply in form with the legal requisites of such process." The court had no power to award the execution which was issued; it acquired no jurisdiction to issue it in the particular case, and the process did not comply in form with the material requisites prescribed for it. We think it was absolutely void and that we should so declare it in obedience to the direct and peremptory mandate of the Code.

The contrary opinion is sought to be supported by the authority of two cases —*Stoutenburgh* v. *Vandenburgh* (7 How. 229) and *Blivin* v. *Bleakley* (23 id. 124). The first was a Special Term decision, and held, with manifest doubt and hesitation, that the execution, without a docketed judgment in the county office, might be deemed regular for the purposes of a levy on personal property, at least from the time of the actual docket. The other case goes further. In that the execution was issued on the fourth of October and the judgment docketed on the fifth. The process was held to have been merely premature, and voidable rather than void, and good, therefore, from its date unless set aside by the court. Without either approval or disapproval of that case, the one at bar is easily

distinguished.   Here the judgment never was docketed during the life of the process and not until long after its vitality was spent.   When the docket was made there was no execution in existence that could be made good by any mode of amendment, and an effort to amend would be to create a cause of action where none before existed.   But there is a further fact to be considered.   The cases cited were under the provisions of the old Code, section 287 of which provided that "when the execution is against the property of the judgment-debtor, it may be issued to the sheriff of any county where the judgment is docketed."   This language, which was permissive, and possibly might be deemed only directory, has been changed to the peremptory and mandatory words " *can* be issued *only*." We must recognize and give effect to the manifest purpose of the altered language.   A somewhat similar change took place respecting executions against the person.   Section 288 of the old Code provided " an execution against the person * * * may be issued * * * after the return of an execution against his property unsatisfied."   Under this provision a body execution, issued before the return of a property execution, was ruled to be merely voidable.

But the Code of Civil Procedure used different language and enacted that " an execution against his person *cannot* be issued until an execution against his property has been returned," and under this provision it was held that the execution was void, unless preceded by the requisite execution against property. (*Bergman* v. *Noble*, 19 Abb. N. C. 62.) I observe that the respondent does not question the soundness of this decision, but puts it upon the peremptory language of the statute as changed in its final form.   But I do not think there is any material difference between the language that an execution " cannot isssue " except, and that it " *can* issue *only* " when.   The prohibition founded upon the absence of the required condition precedent is equally strong in each case.

Deeming the execution to have been void and a nullity, it follows that no action can be maintained for its false return. The doctrine brought to our attention that the officer who

receives the process, and, treating it as valid, proceeds to execute it, cannot allege its defective character has its proper application to cases where the defect is capable of amendment, or may be waived, and the process is merely irregular and cannot apply where it is wholly void. Here there was no process; the paper so issued and entitled was a nullity, and cannot serve as the basis of an action. For these reasons we agree with the Special Term. As the defect is vital and fatal to any recovery, no permission to amend is asked or would be of any utility.

The judgment of the General Term should be reversed, and that of the Special Term affirmed, with costs.

All concur.

Judgment accordingly.