JOPLIN CONSOLIDATED MINING COMPANY v. CITY OF JOPLIN *et al.*, *Appellants*.

Division One, July 9, 1894.

1. **Land Proprietor**: FLOWING STREAM: USE OF WATER: SEWAGE. The proprietor of land through which a stream of water flows can not insist that the water shall come to him in the natural pure state; he must submit, and that, too, without compensation, to its reasonable use by the upper proprietors and also to the natural wash and drainage coming from cities and towns.

2. ————: CITY: SEWAGE. A city, however, can not lawfully collect its sewage and convert it into a stream so as to injure the lower proprietor.

3. ————: ————: ————: INJUNCTION. Such lower proprietor will, for damages thus sustained, have an action and in many cases will be entitled to injunctive relief.

4. **City**: PUBLIC SEWERS: NATURAL STREAM: STATUTE. Under Revised Statutes, 1889, section 1541, providing that public sewers shall be established along the principal courses of drainage to such extent and under such regulations as may be provided by ordinance, a stream may be used for sewer purposes by having a sewer empty into it.

5. ——: ——: ——: DAMAGES. Damages must, under the constitution, be paid for injuries to land, caused by the discharge of a city sewer into a stream flowing through the land.

6. ——: ——: CONDEMNATION PROCEEDING: DAMAGES. In condemnation proceedings for a right of way for a sewer through plaintiff's land, damages to the latter, through the discharge of the sewage into a stream passing through such land, may be awarded, though not in terms mentioned in the ordinance authorizing the condemnation.

7. ——: ——: ——: INJUNCTION. Where the law authorizes a city to condemn private property for public use and gives to the landowner an adequate remedy, the city will not be enjoined, so long as it keeps within the legislative grant of power.

8. ——: ——: ——: NOTICE. A landowner is not entitled to notice of an ordinance providing for condemnation of his land for a sewer right of way, but only to notice of the proceedings to condemn.

9. ——: ——: ——: PUBLIC USE. Whether the contemplated use of the property which is being condemned for sewer purposes is a public use is for the court to determine, and that, too, without regard to any assertion by the city council that the proposed use is a public one.

10. ——: ——: ——. The question, however, whether the public welfare requires the sewer or makes it necessary or expedient is for the determination of the city council.

11. ——: ——: STATUTE: CITY COUNCIL. Though section 1541 of Revised Statutes of 1889 provides that a public sewer shall not be constructed through private property, when it is practicable to construct it along the street, the judgment of the city council on such question will be reviewed only on a strong showing.

12. ——: ——: DESCRIPTION OF LAND. Land through which a public sewer was condemned *held* sufficiently described.

*Appeal from Newton Circuit Court.*—HON. M. G. McGREGOR, Judge.

REVERSED.

*J. C. Trigg, George Hubbert* and *J. W. McAntire* for appellants.

(1) There can be no question as to the power of the city to establish a general sewer system. R.

S. 1889, sec. 1544. The city exercised the power by ordinance. The city may condemn land for sewer route. R. S. 1889, secs. 1524 and 1544, ordinance number 119. (2) If the act or charter authorizing the appropriation of the property itself provides a specific remedy to the landowner by which the amount of his compensation shall be ascertained, that method, if it is complete or adequate, is usually regarded as exclusive. Dillon on Municipal Corp. [4 Ed.], sec. 613, and authorities there cited. "The city, so long as it pursues and keeps within its legislative grant of power, is not liable to a common law action, nor will it be enjoined." Dillon on Municipal Corporations [4 Ed.], sec. 613, and authorities therein cited; *Jamison v. Springfield*, 53 Mo. 224. (3) "If the proceedings are void and do not cast a cloud upon the owner's title, he must resort to ordinary legal remedies." If the municipal authorities have failed to follow the provisions of the charter, or have exceeded the jurisdiction which it confers, the remedy of the landowner for the review and correction of the proceedings is by *certiorari*, and not by a bill in equity. Dillon on Municipal Corporations [4 Ed.], sec. 611; *Ewing v. St. Louis*, 5 Wall. 413; *Hunnewinkle v. Georgetown*, 15 Wall. 547; *Marsh v. Brooklyn*, 59 N. Y. 280; *Hatch v. Buffalo*, 38 N. Y. 276; *Guest v. Brooklyn*, 69 N. Y. 506; *Anderson v. St. Louis*, 47 Mo. 479. (4) If the condemnation proceedings were void as claimed by plaintiff on trial then the insurmountable barrier to equitable proceeding exists, to wit, the legal remedy of ejectment. *Anderson v. St. Louis*, 47 Mo. 484; *Hammerslaugh v. St. Louis*, 57 Mo. 219; *Armstrong v. St. Louis*, 69 Mo. 309; *Gray v. Railroad*, 81 Mo. 130; *Wilcox v. Walker*, 94 Mo. 92; *Cory v. Railroad*, 100 Mo. 293; *Moses v. Dock Company*, 84 Mo. 244. (5) If the proceedings were not void they can not maintain injunction, for the reason that they have the right by

law to appeal. R. S. 1889, sec. 1524; *Railroad v. Maddox*, 92 Mo. 471. (6) The plaintiff could, if action of council was unlawful, have brought suit for trespass or sued for the land taken. *Jamison v. Springfield*, 53 Mo. 225. (7) If a nuisance is shown to exist, plaintiff could sue for damages. *Edmonson v. Moberly*, 98 Mo. 523. (8) Where the plaintiff has an adequate remedy at law it is the established doctrine in this state that injunction, will not lie. *Burgess v. Kattelman*, 41 Mo. 480; *Hopkins v. Lowell*, 47 Mo. 102; *Steines v. Franklin Co.*, 48 Mo. 167; *Damschroder v. Thias*, 51 Mo. 100; *Bailey v. Wade*, 24 Mo. App. 186; *Spitz v. Kerfoot*, 42 Mo. App. 79, (9) The question of the practicability of constructing the sewer parallel with one of the exterior lines of the land is for the council to determine and it is not necessary that it declare that it has determined that question, as it is presumed by its acts that it did so. Dillon on Municipal Corporations [4 Ed.], sec. 601; Elliott on Roads and Streets, sec. 250–252; *McCormack v. Patchin*, 53 Mo. 33. (10) The court has nothing whatever to do with the discretion of the council or the unreasonableness of its action, if it has legislative authority for doing what it undertakes to do. *St. Louis v. Green*, 7 Mo. App. 168; Cooley on Constitutional Limitations, 164; 34 Mo. App. 521. In equity the supreme court is not bound by the finding upon the evidence in the lower tribunal. *Morey v. Staley,* 54 Mo. 419.

*G. & A. Spencer* and *E. O. Brown* for respondent.

(1) The presumption prevails that the findings of the trial court are supported by the evidence. *Craig v. Scudder*, 98 Mo. 664; *Jayne v. Wine*, 98 Mo. 404; *Alleman v. Manning*, 44 Mo. App. 4. (2) Injunctive relief will lie in this case. 1 High on Injunctions [2 Ed.],

sec. 702; *Butter v. Thomasville*, 74 Ga. 570; 2 Dillon's
Municipal Corporations, sec. 908; *Heer Dry Goods Co. v.
Railroad*, 41 Mo. App. 63; *Harber v. Evans*, 101 Mo. 661;
*Railroad v. Railroad*, 94 Mo. 535; *Railroad v. Church*,
108 U. S. 317. There was not a sufficient description
of the lots sought to be appropriated in the Joplin
Mining & Smelting Company's third addition to Joplin.
*Henry v. Mitchell*, 32 Mo. 512; *Evans v. Ashley*, 8 Mo.
178.

BLACK, P. J.—The plaintiff corporation brought
this suit to enjoin the city of Joplin, a city of the third
class having a population of ten or twelve thousand
inhabitants, from building a public sewer over certain
lands owned by plaintiff. The circuit court made the
temporary injunction perpetual, and the city appealed
to the St. Louis court of appeals. That court trans-
ferred the cause to this court because of certain alleged
constitutional questions raised by plaintiff in support of
the decree of the circuit court.

There is no dispute as to the following general out-
line facts of the case: The plaintiff corporation is the
owner of the southwest quarter of the northwest quar-
ter of section 2, etc., and also other lands north of and
adjoining said forty acre tract. These lands are all on
the north side of the city, but within the corporate
limits thereof. Joplin creek enters the forty acre tract
first above described near the southeast corner thereof
and runs thence in a northwest direction to a point
near the northwest corner of said tract. There it passes
over plaintiff's land and runs in a general northern
direction for the distance of two or three hundred feet
and then turns to the east and passes northward over
and across the lands of the plaintiff which adjoin and
lie to the north of the forty acres first before mentioned.

On the third of September, 1890, the city council

passed an ordinance numbered 302 establishing a general sewer system according to what is called the Rosewater survey, a survey made by a sanitary engineer as the result of much care and study on his part. The outlet section specified in the survey and ordinance begins at a point near the north line of the forty acres and runs north along the valley of Joplin creek to Turkey creek. It seems the city was unable to build the entire system at one time, so that this Turkey creek section was abandoned for the time being. On the twelfth of November, 1890, the council pased another ordinance numbered 342, providing "that a public sewer be established as heretofore provided by ordinance" across the forty acres, describing the course and boundaries of a strip of land ten feet in width, and declaring that the land so described "is hereby taken and condemned for public use as a part of the said public sewer route and just compensation therefor shall be assessed, collected and paid according to law." The strip of land thus described begins on and near the middle of the south line of the forty acres and runs thence in a northerly direction to a point near the northwest corner of that tract, where it ends in Joplin creek at a point on the west line of plaintiff's forty acres. The sewer is to be twenty inches in diameter and will be so constructed as to discharge its contents into Joplin creek at the point where it ends in that creek.

It is alleged in the amended petition that the city, without right or authority, entered upon the forty acres and began the construction of the sewer; that it proposes to build the same over the land without first paying the plaintiff the damages which it will sustain. The answer justifies under proceedings had to condemn the property. The evidence on these issues shows that proceedings to condemn the strip of land were had and the damages assessed at $500; that the plaintiff in

this suit was served with notice in those proceedings; that the plaintiff appealed from the award to the circuit court; that the award was confirmed by the city council and the $500 paid to the clerk of the circuit court for the plaintiff here, the defendant there. Thus matters stood when this suit was instituted. A change of venue was awarded in those proceedings, and they were still pending when this suit was tried.

From the pleadings and evidence it appears that Joplin creek is fifteen or eighteen feet wide at the point where the sewer will discharge its contents. The banks at and below that point are low, the water shallow, and the course of the stream illy defined. The water has been used for washing lead and zinc ores. On rare occasions the creek becomes dry, but in general there is a considerable body of water flowing down through plaintiff's land. The plaintiff produced much evidence tending to show that the sewer will pollute the water and render it useless, and that plaintiff's land on either side of the creek will be damaged by reason of deposits thereon of sewer matter. On the other hand the defendant produced evidence tending to show that the water in the creek is now unfit for any domestic use, and that there is an abundance of water flowing down the same to carry off all the matter which will be discharged into it. In the view we take of this case it is not necessary to enter into the details of the evidence of the character just mentioned.

1. The proprietor of land through which a stream flows can not insist that the water shall come to him in the natural pure state. He must submit, and that, too, without compensation, to the reasonable use of it by the upper proprietors; and he must submit to the natural wash and drainage coming from towns and cities. But a city has no right to gather its sewage together and cast it into a stream so as to injure the lower

proprietor. For damages thus sustained, the lower proprietor will have an action, and in many instances injunctive relief. *Proprietors of Locks, etc. v. Lowell*, 7 Gray, 223; *Haskell v. New Bedford*, 108 Mass. 208; *Vale Mills v. Nashua*, 63 N. H. 136; *Chapman v. Rochester*, 110 N. Y. 373; Lewis on Eminent Domain, section 65. The author just mentioned says: "But we see no reason why this could not be done if authorized by law and compensation was made for taking the right to pure water."

Section 1541, Revised Statutes, 1879, provides: "Public sewers shall be established along the principal courses of drainage, at such times, to such extent, of such dimensions and under such regulations as may be provided by ordinance." And other sections give the city ample power to condemn private property for sewer purposes, the compensation to be ascertained by five freeholders to be appointed by the mayor. Secs. 1524 and 1544. The fair, and, we think, clear, implication of the language used in section 1541 is that the principal courses of drainage may be used for sewer purposes, until sewers are constructed along the same. Indeed, these courses of drainage constitute the only receptacles for such matter. We, therefore, hold that the city of Joplin has the right and power to construct the public sewer in question so that it will discharge its contents into Joplin creek. Whether the city can do this so as to create a public nuisance we need not inquire, for in our opinion the evidence makes out no such a case. It does, however, tend to show that the plaintiff's lands will be damaged by the discharge of the sewer matter into the creek. Whether this damage would amount to the taking of private property for public use is not important to inquire; for our constitution declares that private property shall not be taken or *damaged* without just compensation. If the

discharge of the sewer matter into the creek will decrease the value of the plaintiff's land through which the creek runs, then the damage thus done is clearly within the constitutional provision, and the plaintiff must have compensation therefor. *Van De Vere v. Kansas City*, 107 Mo. 84.

The question then arises whether this compensation can be awarded to the plaintiff in the comdemnation proceedings still pending in the circuit court. The ordinance condemning the strip of land does not, in terms, include the right to discharge the sewer matter into the creek but it stands as a conceded fact that such is the intention of the city. The sewer, as it is being constructed, can be used only by making the creek the point of discharge.

In *Railroad v. Baker*, 102 Mo. 559, we said: "The corporation exercising the right of eminent domain can not avoid the payment of the damages done to the entire farm by selecting out and describing in the petition the forty acre tracts through which the road may be located." All damages to the land not taken by reason of the use to which the part taken is to be put, should be taken into account. *Railroad v. Porter*, 112 Mo. 368; see cases cited in note to *Railroad v. Waldron*, 88 Am. Dec. 114. The fact that the ordinance does not, in terms, undertake to acquire the right to use the stream as an outlet for the sewer is immaterial. All damages to the lands of the plaintiff not taken, arising from the use of the stream as an outlet for the sewer, can therefore be taken into account in assessing damages in the proceedings to condemn.

With this conclusion the question arises whether the plaintiff can have injunctive relief. Where the law affords a full and adequate remedy, equity declines to interfere. *Railroad v. Maddox*, 92 Mo. 469. Where, as here, the law authorizes a city to condemn private

property for public use and gives to the land owner an adequate remedy, the city will not be enjoined, so long as it keeps within the legislative grant of power. 2 Dillon on Mun. Corp. [4 Ed.] sec. 613.

But it is insisted that the rule just stated can not apply to this case, because the proceedings to condemn were, and are, illegal and void.

To show that they are void, counsel for plaintiff base their argument on the erroneous assumption that ordinance 342 is relied upon as of itself constituting the condemnation; and it is then argued that the ordinance was enacted without notice to the plaintiff corporation, so that it had no opportunity to show that the use proposed to be made of the property was not a public use, or that there was no public necessity for the sewer. It is true that the ordinance provides that the described property "is hereby taken and condemned," but it also provides that just compensation shall be paid therefor. The ordinance did not, of itself, amount to a condemnation of the land. It simply laid the foundation for the subsequent proceedings. The law gives the property owner no right to demand notice of the proposed passage of the ordinance. He is, however, entitled to notice of the condemnation proceedings, and such notice was duly and properly given.

The question whether the contemplated use of the property is really a public use is a judicial question, and will be determined by the courts without any regard to any assertion of the city council that the proposed use is a public use. (Sec. 20, art. 2, const.; 91 Mo. 54; 98 Mo. 215; 101 Mo. 406). But it is for the city council to determine the question whether the public welfare requires or makes the sewer necessary or expedient. With that question the courts have nothing to do, for the law has confided it to the judgment of the city council. See authorities last cited, and 11 Mo. 242.

The further objection is made that no petition was filed before the mayor, setting forth the fact that no agreement could be had with the plaintiff as to the compensation to be paid. The statute does not provide what the petition shall state. Indeed, it does not provide that any petition shall be filed. It is left to the council to make all such regulations by ordinance (sec. 1526), and such an ordinance was produced in evidence. According to this ordinance the proceedings to assess damages are commenced by filing a plat made by the city engineer. The ordinance does not require any statement to be made on the plat to the effect that no agreement could be had. The parol evidence, however, shows that an ineffectual effort to come to an agreement was made and that is sufficient under the ordinance.

Section 1541, Revised Statutes, provides, among other things, "that no sewer shall be run diagonally through private property when it is practicable, without injury to such sewer, to construct it parallel with one of the exterior lines of such property, nor shall any public sewer be constructed through private property when it is practicable to construct it along or through a street or other highway." Evidence was introduced tending to show that this sewer could have been built along streets; and on the other hand much evidence was introduced tending to show that the sewer could not be constructed along streets without impairing its usefulness and greatly increasing the cost thereof. It is enough to say a very strong case should be presented to justify the courts in interfering with the judgment of the city council on such a question; and no such a case is presented by this record.

It appears the plaintiff's grantor laid off a few lots on the south side of the forty acre tract and filed a plat thereof in the recorder's office. The sewer passes

over two of these lots.   They are not mentioned in the ordinance or condemnation proceedings, and it is hence objected that the description of the land to be taken is bad.   The land to be taken is described by beginning at a designated point on the south line of the forty acres and running thence on a stated and defined course. The description thus given necessarily includes a part of these two lots, and it was not essential to mention them.  This description is entirely unlike that condemned in *Henry v. Mitchell*, 32 Mo. 512.

Various other minor objections are made.   It is sufficient to say they lay no foundation whatever for equitable relief.   The plaintiff can assert and have all of its rights determined in the condemnation proceedings appealed by it to the circuit court.   There is, therefore, no case here calling for equitable interference. The judgment is reversed and the petition dismissed. BRACE and MACFARLANE, JJ., concur.   BARCLAY, J., dissents.